[Crim. No. 7451. Third Dist. Dec. 4, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD ORR, Defendant and Appellant.

668

COUNSEL

Dennis K. Cowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Kevin M. Corrington, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

PARAS, J.—Defendant was charged with grand theft of a bovine animal and assault with a deadly weapon. (Pen. Code, §§ 487, subd. 3; 245, subd. (a).) The jury found him guilty on both offenses and also of using a firearm (a .22 caliber rifle) in connection with the assault. (Pen. Code, § 12022.5.)

On appeal, defendant raises the following three contentions: 1. The evidence was insufficient to support a conviction of grand theft because it was not shown that he took part in the shooting or transporting of the animal.

2. The evidence was insufficient to support a conviction of assault with

a deadly weapon because it was not shown that defendant had the present ability to commit a violent injury on Donald James Henderson, the victim.

3. The trial court committed prejudicial error in failing to instruct the jury on the lesser included offense of drawing or exhibiting a firearm.

### FACTS

A heifer belonging to rancher Terrill Whitlock was shot four times in the head with a .22 caliber rifle sometime in the early morning of October 19, 1973. The animal had been killed in the pasture about 200 feet from the fence which ran along a public road. The carcass had been dragged through an opening which had been cut into the fence and was lying near the road. The discovery of the incident came about through a series of observations made by persons who testified at the trial. The carcass was first discovered about 5:15 a.m. by Roy Burt; he was driving past the Whitlock pasture, and just after a blue Ford van passed him going in the opposite direction he saw the dead animal. He examined it, saw the cut wire fence, and drove toward Whitlock's ranch house, back in the direction from which he had come. He again passed the Ford van which was now heading back toward the dead heifer, and noted that it looked strange because its doors were flapping open. His suspicion aroused, he noted the license number, getting all the numbers and two of the three letters. Upon being informed by Burt, Whitlock phoned Deputy Sheriff Henderson, who was a nearby neighbor. Henderson drove immediately to Whitlock's place, spoke with Burt and set out to find the blue Ford van. He stopped a short distance from it; and defendant, who was riding on the passenger's side, got out of the van and pointed a rifle at Henderson who was still in his car. Henderson backed up quickly into a ditch. Defendant got back into the van and it drove off.

Later the same morning, about 7:15 a.m., Evelyn Flood saw the blue Ford van parked in the middle of the county road which ran through her ranch property. She wrote down the license number, getting all three numbers correctly and two of the letters, not being certain whether one was a "G" or a "C." There were two persons in the van and she identified defendant as the passenger. After her report to the authorities, the ownership of the van was quickly traced to Joe Nunes. Defendant and one Richard Lee lived with Nunes at the latter's address in Chico. Deputy Henderson and another deputy sheriff, Lawrence Pritchard, investigated at the Chico address and found the Ford van in the driveway. Henderson recognized defendant, who was present, as the person who had pointed the gun at him. A .22 caliber rifle was found in the residence. Spent .22

caliber rifle cartridges were found at the scene of the heifer shooting and also in the Ford van. Ballistics tests showed that the spent cartridges all matched and came from the gun found in the house.

Defendant did not testify and there were no defense witnesses. The only defense (other than the presumption of innocence, of course) was a statement which defendant made to Deputy Sheriff Pritchard at the time of his arrest, when defendant stated to Pritchard that he had not been in the vicinity of the alleged crimes since July 4, 1974, more than three months before the alleged crimes. This was brought out on direct examination of Pritchard by the prosecutor.

1. Sufficiency of Evidence as to Grand Theft.

Defendant contends there was no evidence that he took part in the shooting or moving of the heifer. Although defendant does not spell it out directly, his contention is based partly on the fundamental principle of the law of theft that there must be proved some asportation of the property with intent to permanently deprive its owner of it. (See, e.g., *People* v. *Walther* (1968) 263 Cal.App.2d 310, 316 [69 Cal.Rptr. 434].) Defendant claims that the evidence showed only that he was in the general vicinity of the dead heifer about the time it was killed. He argues that although the evidence showed he had possession of a rifle at one time and that a rifle linked to the shooting was found where he lived with spent cartridges in the van in which he was a passenger, no evidence proved that he fired the rifle or was in the pasture where the heifer was shot. He points out that there was another man with him driving the van who was arrested and prosecuted. He concludes that the entire theft case against him was built on circumstantial evidence. This, of course, is true, and the trial court properly instructed the jury in the use of circumstantial evidence and its limitations.

█ While the jury was obviously not bound to convict defendant on the circumstantial evidence presented to it, the law is clear that a conviction of a criminal offense, including grand theft, may be based on circumstantial evidence. (*People* v. *Bynum* (1971) 4 Cal.3d 589, 599 [94 Cal. Rptr. 241, 483 P.2d 1193]; *People* v. *Moore* (1965) 234 Cal.App.2d 29, 31 [44 Cal.Rptr. 184].) █ The test on appeal is whether or not there is any substantial evidence to support the conclusion of the trier of fact. If the circumstances reasonably justify the findings of the trier of fact, it is of no consequence on appeal that the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Bynum, supra,* at p. 599.) Looking at the evidence, we see that the heifer was shot with

a gun which circumstances showed defendant or his companion could have used. They were in the vicinity under circumstances which showed it to be a reasonable inference that they were about to load the heifer in the van when interrupted by the approach of Roy Burt's vehicle. The jury was justified in convicting defendant as a direct principal in the theft or as an aider and abettor to his companion who was driving the car. As the trial court correctly instructed the jury, a person who aids and abets (assists) another is regarded by the law as a principal under section 31 of the Penal Code. (*People* v. *Gonzales* (1970) 4 Cal.App.3d 593, 599 [84 Cal.Rptr. 863].)

We have considered the cases of *People* v. *Flores* (1943) 58 Cal.App. 2d 764 [137 P.2d 767] and *People* v. *Bamber* (1968) 264 Cal.App.2d 625 [70 Cal.Rptr. 662] which are relied upon by defendant in his argument that there is no substantial evidence to support the theft verdict. The cases are inapposite. They are totally distinguishable, factually and legally. In *Flores,* there was no aiding and abetting option given to the jury and two persons other than defendant admitted the theft. In *Bamber,* the prosecution's evidence only placed defendant near the scene of the crime in the presence of one who might have committed it. There was no physical evidence such as we have in the instant case in the form of the gun and cartridge cases connecting defendant with the dead heifer.

We could set aside the verdict and judgment on the theft conviction for insufficiency of evidence only if it clearly appeared that upon no hypothesis whatever is there sufficient substantial evidence to support such verdict and judgment. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) Such is not the case.

2. Sufficiency of Evidence as to Assault With a Deadly Weapon.

Defendant contends that there was insufficient evidence to sustain the conviction of assault with a deadly weapon upon Deputy Henderson because (a) the prosecution must prove every essential element of the crime charged beyond a reasonable doubt, (Pen. Code, § 1096) and (b) the deadly character of an instrument is an essential element of the offense. (*People* v. *Peak* (1944) 66 Cal.App.2d 894, 900-901 [153 P.2d 464].) Defendant argues that since he was not close enough to Henderson to use the rifle as a club, it was only a deadly weapon if it was loaded when he pointed it at Henderson. He claims that the burden was therefore on the prosecution to show the rifle was loaded when pointed at Henderson and that no such evidence was presented.

It is true that pointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon. This is for the reason that there is no present ability to commit a violent injury on the person. (See *People* v. *Mosqueda* (1970) 5 Cal. App.3d 540, 544 [85 Cal.Rptr. 346]; *People* v. *Ranson* (1974) 40 Cal. App.3d 317, 321 [114 Cal.Rptr. 874].) The trial court instructed the jury properly on the requirement of "present ability" and "physical means" to accomplish an injury upon Deputy Henderson.

▮ Under the above recited circumstances of this case, there was substantial evidence for the jury to conclude defendant had the ability to shoot Henderson. The question of whether or not the gun was loaded is a question for the jury, and the prosecution can establish it by circumstantial evidence. (*People* v. *Montgomery* (1911) 15 Cal.App. 315, 318-319 [114 P. 792].) The jury could have reasonably decided on the circumstantial evidence that the rifle defendant pointed at Henderson was loaded. It could rationally be assumed it was the same rifle that had killed the heifer just shortly before. It was in the van with spent cartridges and the rifle was operable, i.e., capable of being fired, as subsequent tests showed. The jury made an implied finding that the weapon was loaded. Here again, we must conform to the rule with respect to reviewing sufficiency of evidence on appeal. We must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Redmond, supra,* at p. 755.) Having done so here, we hold there was sufficient substantial evidence to support the conviction of assault with a deadly weapon.

3. Failure to Give *Sua Sponte* Instruction.

Defendant contends the trial court committed reversible error in failing to instruct, *sua sponte,* on the lesser included offense of drawing or exhibiting a firearm. (Pen. Code, § 417.) Defendant relies upon the general rule that a trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though not requested to do so, and upon the more specific rule that a *sua sponte* instruction is required as to necessarily included lesser offenses. (*People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *St. Martin* (1969) 1 Cal.3d 524, 532, 534 [83 Cal.Rptr. 166, 463 P.2d 390].) Defendant argues that because he was charged with using a firearm in connection with the assault (under Pen. Code, § 12022.5), there was necessarily included a charge of violation of Penal Code section 417.

Penal Code section 417 reads as follows: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor." Defendant points out that the above quoted section applies whether a firearm is loaded or unloaded. He argues that the jury should have been afforded the opportunity, under lesser included offense instructions, of deciding that the gun was unloaded, so that an assault would not have been committed, but a misdemeanor violation of section 417 would have been committed.

Defendant places reliance principally upon *People* v. *Hood, supra,* and *People* v. *St. Martin, supra.* The *St. Martin* case, decided in 1969, laid down two basic tests for determining whether one offense is a necessarily included lesser offense within another offense for the purpose of *sua sponte* instructions. First, where one offense cannot be committed without committing another offense, the latter is a necessarily included offense. Second, a lesser offense is necessarily included if it is within the offense specifically and factually charged in the accusatory pleading (as distinguished from use of the statutory language defining the crime). (*People* v. *St. Martin, supra,* at p. 536.) ■ Defendant's contention fails under the first test referred to above, because it has been specifically held that the Penal Code section 417 offense is not a necessarily included offense within the statutory definition of the Penal Code section 245, subdivision (a) offense; therefore the latter offense can be committed without committing the former. (See *People* v. *Birch* (1969) 3 Cal.App.3d 167, 176 [83 Cal.Rptr. 98].) ■ Defendant's contention likewise fails under the second test because the Penal Code section 417 offense of drawing and exhibiting a firearm is not within the offense charged in the accusatory pleading (assault with a deadly weapon); the pleading charged the assault in a general manner without alleging a weapon was "drawn or exhibited" in a rude, angry or threatening manner, as defined in Penal Code section 417.

Defendant's argument that reference to use of a firearm for purposes of Penal Code section 12022.5 rendered the pleading specific enough to charge "drawing or exhibiting" is without merit. An allegation of applicability of Penal Code section 12022.5 is not part of a charge of an offense itself. It merely provides for added penalty in crimes in which a firearm is used and is a legislatively mandated method of requiring and providing for such penalty. It was so held in *People* v. *Henry* (1970) 14 Cal.App.3d 89 [91 Cal.Rptr. 841]. ■ We now further hold, as a logical consequence of this rule, that an allegation of firearm use for purposes of Penal Code

section 12022.5 is not to be considered in determining whether the accusation encompasses a lesser included offense.

In connection with the foregoing, the reasoning of the court in *People* v. *Wade* (1959) 53 Cal.2d 322 [1 Cal.Rptr. 683, 348 P.2d 116] also comes into play. There the court was concerned with an attempt by defendant on appeal to show that in a particular first degree murder case, the court should have instructed on second degree. The Supreme Court, in analyzing the record, found that: "Defendant's theory of the case [on appeal] was not one that the evidence would strongly illuminate and place before the trial court. On the contrary, it was so far under the surface of the facts and theories apparently involved as to remain hidden from even the defendant until the case reached this court on appeal. The trial court need not, therefore, have recognized it and instructed the jury in accordance with it. Omniscience is not required of our trial courts." (*People* v. *Wade, supra,* at p. 335.) The quoted reasoning of the Supreme Court in the *Wade* case is factually applicable to this case. (See also *People* v. *Cram* (1970) 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393].

The trial court did not err in failing to give a *sua sponte* instruction involving Penal Code section 417.

The judgment is affirmed.

Regan, Acting P. J., and Janes, J., concurred.