[No. F004619. Fifth Dist. Aug. 22, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
EDGAR CHARLY GLOVER, Defendant and Appellant.

COUNSEL

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RITCHEY, J.*—Defendant appeals from his conviction of one count of possession of phencyclidine (PCP) (Health & Saf. Code, § 11377, subd. (a)) and two counts of assault with a firearm, specifically a handgun (Pen.

*Assigned by the Chairperson of the Judicial Council.

Code, § 245, subd. (a)(2)).[1] Following defendant's referral to the Director of Corrections for a 90-day diagnostic study pursuant to section 1203.03, the trial court sentenced defendant to three years in state prison.

Defendant asserts his conviction must be reversed because the trial court erred in failing to modify CALJIC No. 9.03 (4th ed. 1979)[2] to reflect the particularized crime with which defendant was charged, i.e., assault with a firearm in lieu of assault with a deadly weapon. For the reasons we shall discuss, we reject defendant's contention, and we will affirm the judgment.

STATEMENT OF FACTS

On October 18, 1983, Yvonne Holt, a process server for the Fresno County Sheriff's Department, went to a residence at 2493 South Elm in Fresno to serve a notice and citation for appearance on a woman named Louisa Thomas. Defendant answered the door and advised Holt that Thomas was not there at that time; Holt left a business card identifying herself and her function. Holt returned to the residence on October 19 at approximately 11:30 a.m. Three vehicles were parked in the driveway; one was a dark van and another was a white, four-door sedan. Holt parked her car next to the middle car of the three.

Although Holt saw some people in the van, she did not see defendant get out of the van but did observe him coming around the side of that vehicle and yelling at her to keep going. Holt started to pick up her police radio but had not made any call when defendant again shouted "I think you had better keep on going." At that point Holt saw defendant on the far side of the white sedan with his arm extending over the roof of the vehicle pointing a blue steel, snub-nosed revolver at her. Holt placed her hands on top of her steering wheel so defendant could see them and said to defendant, "Okay. Fine. Don't get excited."

Holt then drove forward in order to leave the premises and stopped about one block away to call for backup. While waiting for the police to respond, she was approached by Edward Armbrister, a United States letter carrier, who appeared "shaken up, scared. Kind of frantic." The police responded to Holt's location within three to four minutes, and Holt subsequently identified defendant as the man who had pointed the gun at her.

Armbrister testified he had gone to the residence at 2493 South Elm in the course of his employment and had parked his postal vehicle in front of

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]All CALJIC instructions referred to are from the fourth edition (1979) unless otherwise indicated.

the building. He also observed at least two other cars parked there, one of which was a van. Armbrister approached the house with some mail in his hands and saw two women walking toward the passenger side of the van. A man followed about five feet behind and carried a baby in his arms. Armbrister identified the man as defendant and testified he said to defendant, "How you doing?" Defendant replied, "Not so good." Armbrister did not observe any other children.

When Armbrister was within 10 feet of defendant, defendant dropped the baby to the ground near the rear of the parked sedan and loudly told one of the women, "Come over here and pick up the God damned baby, make it shut-up." Defendant then began to walk toward the building. As Armbrister was about to deposit the mail in the mail slot, he looked at defendant and saw defendant's hand come up toward him holding a gun. The gun came all the way up, "tracking" on Armbrister as Armbrister turned away and started to return to his vehicle. Armbrister also left the scene without further incident and later identified defendant.

Based on prior extensive experience with weapons, both Holt and Armbrister were certain in their identification of the weapon being held by defendant as a blue steel, .38 caliber snub-nosed revolver. Holt could not tell if the weapon was loaded, but Armbrister was certain it was since the head of a bullet was visible to him in the cylinder. Armbrister testified defendant held the gun in a manner consistent with a readiness to fire, i.e., defendant's finger was on the trigger and his hand was gripping the butt of the gun.

Police officers responded to defendant's residence at approximately 11:45 a.m. but defendant refused to come out. He was finally arrested at 1 p.m. Fresno Police Officer Lawrence Bradley participated in the ensuing search of defendant's residence which Bradley described as "like a junk yard," containing quite a conglomeration of items. Although some shells were found, no gun was located in the search.

During the booking search of defendant at the Fresno County jail, a foil cylinder was found in defendant's pocket; the cylinder contained a damp, brown cigarette which smelled like ether. Subsequent chemical analysis of the cigarette established that it contained PCP.

Defendant testified that on the day in question he and two women, each of whom had a young child, left defendant's residence at about noon to go to the store. One of the children was defendant's seven-year-old son by Louisa Thomas. Defendant's son said he wanted his toy gun. Defendant told him to get into the van with his mother, and defendant would go back to get the child's toy. Defendant did so, and in attempting to secure the dead-

bolt on the front door, defendant laid the toy gun down on top of the white sedan. Defendant then went to the side of the van to let the women and children into the car, which had been locked, and went back to retrieve the toy revolver. He noticed Holt pull up, and defendant testified that as he waited for her to get out of her car, he placed his hands on top of the white sedan. At this time defendant was shouting at his son not to get out of the van. Defendant observed Holt open her car door and "raise up" so she could see defendant, who was standing on the far side of the white sedan. Defendant testified he might have placed his hand on the toy gun. Holt then sat down in the car, and defendant continued to wait to see what she would do. Before she left, Armbrister pulled up behind her, walked between the cars, spoke to defendant, deposited the mail, and left. Defendant then got everyone out of the van and returned to the residence so he could read his mail. Defendant testified he did not even own a gun.

Armbrister was recalled to observe a toy gun which defendant had introduced into evidence as similar to the one he had retrieved for his son. Armbrister testified that the gun defendant had introduced did not look like the gun which had been pointed at him, and from a comparable distance Armbrister could observe the barrel of the toy gun was plugged.

### Discussion

I. *Did the trial court err in instructing the jury in language defining an assault with a deadly weapon when defendant was charged with assault with a firearm?*

The sole issue raised on this appeal is whether the trial court committed reversible error when it instructed the jury in the language of CALJIC No. 9.03, defining assault with a deadly weapon or by means of force likely to produce great bodily injury. This instruction was requested by both the People and the defendant and was given as requested; the jury was instructed as follows:

"Defendant is charged in Count Two and Three of the Information with the commission of the crime of violation of Section 245 of the Penal Code.

"Every person who commits an assault upon the person of another with a deadly weapon or instrument is guilty of the crime of violation of Section 245 of the Penal Code.

"In order to prove the commission of such crime, each of the following elements must be proved:

"One, that a person was assaulted, and

"Two, that the assault was committed by the use of a deadly weapon or instrument.

"As used in this instruction, a deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury."

Peculiarly enough, it appears the 1979 revision of CALJIC No. 9.03 remains the approved form of the instruction at the present time, notwithstanding the amendment of section 245 in *1982* to separate what had been subdivision (a) into two subparts. Except that the fine was increased in 1983 from $5,000 to $10,000, section 245, subdivision (a), as amended in 1982 (in part by urgency measure) provides: "(a)(1) Every person who commits an assault upon the person of another with a deadly weapon or instrument *other than a firearm* or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for two, three or four years, or in a county jail not exceeding one year, or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

"(2) Every person who commits an assault upon the person of another with a firearm is punishable by imprisonment in the state prison for two, three, or four years, or in a county jail for a term of not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment. . . ." (Italics added.)

Not only did the trial court instruct the jury in the traditional language defining assault with a deadly weapon, the attorneys characterized the charges against defendant in the same terms. (See, e.g., the prosecutor's closing argument, "I shall begin with the charge of assault with a deadly weapon on Miss Yvonne Holt" and defense counsel's closing argument, ". . . [a]nd in a charge of assault with a deadly weapon, it requires the use of a deadly weapon. In this case the deadly weapon alleged is a gun. [¶] . . . nor did he commit an assault with a deadly weapon if the item in fact was not a gun, a real gun."

Accordingly, the trial court erred in failing to modify CALJIC No. 9.03 to reflect the statutory changes. As summarized in *People* v. *Smith* (1978) 78 Cal.App.3d 698, 708-709 [144 Cal.Rptr. 330]: ▮ "Whether requested or not, a trial court is required to give instructions on the legal principles that are relevant to the issues in a criminal action. 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct

on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation omitted.] . . . 'the principle that it is the trial court's duty "to see to it that the jury are adequately informed on the law governing all elements of the case submitted to them to an extent necessary to enable them to perform their function in conformity to the applicable law."'" (See also *People* v. *Rogers* (1971) 5 Cal.3d 129, 137 [95 Cal.Rptr. 601, 486 P.2d 129]; *People* v. *Haney* (1977) 75 Cal.App.3d 308, 312 [142 Cal.Rptr. 186].)

■ Thus it appears that, following the statutory changes in 1982 and 1983,[3] prosecutors would be required to charge defendants under the appropriate subpart of section 245, subdivision (a), depending on whether the assault was committed with a deadly weapon other than a firearm or was committed with a firearm itself. Defendant was correctly charged in the instant case with violation of section 245, subdivision (a)(2), assault with a firearm. However, since the jury was not instructed in terms of the particular elements of the offense charged, resulting in error as we have discussed, it is clear CALJIC No. 9.03 must be modified to reflect the statutory change.[4]

■ With respect to section 245, subdivision (a)(1), CALJIC No. 9.03 is readily modifiable by specifying the particular subsection of the offense with which a defendant is charged in the first paragraph of the instruction and by limiting all subsequent references to deadly weapon or instrument by adding the modifying phrase "other than a firearm."

When a defendant is charged with violating section 245, subdivision (a)(2), the instruction should be modified accordingly, specifying the par-

---

[3]Section 245 was amended by Statutes of 1982, chapter 136, section 1, page 437, urgency effective March 26, 1982, operative April 25, 1982, and by Statutes of 1982, chapter 142, section 1.2, page 469, effective January 1, 1983, this latter amendment lacked the urgency provisions of its companion bill in the Assembly.

[4]A review of the Legislative Counsel's Digest to both Assembly Bill No. 846, 1981-1982 Regular Session, section 1, and Senate Bill No. 561, 1981-1982 Regular Session, section 1.2, leaves no doubt that the purpose of the amendment was to insure some period of incarceration, even if a minimal one, for persons who assaulted with, brandished, or committed various other offenses involving firearms. The underlying offense of assault with a deadly weapon seems in essence to have remained unchanged, although the amendment imposed certain minimum punishment when such an assault was committed with a firearm as opposed to other types of deadly weapons. Regardless of the underlying purpose of the amendments, however, after enactment of these statutory changes, there were two offenses where before there had been only assault with a deadly weapon, to wit: (1) assault with a deadly weapon other than a firearm or by means of force likely to produce great bodily injury or (2) assault with a firearm.

ticular offense in paragraph (1) and modifying the balance of the instruction as follows: "Every person who commits an assault upon the person of another with a firearm is guilty of the crime of violation of section 245, subdivision (a)(2), of the Penal Code.

"In order to prove the commission of such crime, each of the following elements must be proved:

"(1) That a person was assaulted, and

"(2) That the assault was committed by the use of a firearm.

"(3) As used in this instruction, the word 'firearm' includes a pistol, revolver, shotgun, [or] rifle [or] any device designed to be used as a weapon from which a projectile may be expelled by the force of an explosion or other form of combustion."[5] When warranted by the facts of the case, e.g., when the defendant raises as a defense the alleged inoperability of the firearm, the definition is completed by reference to "present ability" as provided in CALJIC No. 9.00 (4th ed. 1984 pocket pt.), defining assault.[6] The additional section of CALJIC No. 9.03, concerning actual bodily injury, should be left unchanged.

■    Notwithstanding the failure of the trial court in the instant case to modify CALJIC No. 9.03 to instruct the jury as to the specific firearm element of the offense with which defendant was charged, it remains for this court to determine if the error was prejudicial. Under the particular facts of this case, we find it was not.

The California Supreme Court's most recent considerations of a trial court's failure to instruct on a necessary element involved the mental element of *intent* (1) when a murder prosecution with special circumstances is founded on a so-called "felony murder" (see, e.g., *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]), or (2) when criminal liability is predicated on a theory of aiding and abetting. (See, e.g.,

---

[5]CALJIC Nos. 17.15 and 17.19 (4th ed. 1984 pocket pt.).

[6]"[P]ointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon. This is for the reason that there is no present ability to commit a violent injury on the person. [Citations omitted.]" (*People* v. *Orr* (1974) 43 Cal.App.3d 666, 672 [117 Cal.Rptr. 738]; see also *United States* v. *Garcia* (9th Cir. 1977) 555 F.2d 708, 712; *People* v. *Ranson* (1974) 40 Cal.App.3d 317, 321 [114 Cal.Rptr. 874]; this court's opinion in *People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346]; and *People* v. *Raner* (1948) 86 Cal.App.2d 107, 112-113 [194 P.2d 37].) Whether a defendant who assaults another with an inoperable or unloaded gun, *used as a bludgeon,* should be charged under subdivision (a)(1) or (a)(2) of section 245 is left for determination to a future case which squarely raises the issue.

*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].) Subsequently in *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], U.S. cert. den. — U.S. — [84 L.Ed.2d 366, 105 S.Ct. 1229], the court reviewed recent decisions of the United States Supreme Court with respect to the standard of reversible error to be applied when the jury is somehow precluded from considering a necessary element of the offense. There the court concluded, "that at least eight justices of the United States Supreme Court (all except Justice Stevens, who took no position on the issue) agree that a jury instruction *which does take an issue completely from the jury is reversible per se.* We have no doubt that they would reach the same conclusion if the error was one of omission—failing to submit the issue of intent to the jury. Both forms of error have the same effect: removing the issue *wholly* from jury determination, and *thus denying defendant the right to jury trial on the element of the charge.*" (*People* v. *Garcia, supra,* at p. 554, italics added.)

■ Intent, like knowledge or any other mental element (see, e.g., *People* v. *Rogers, supra,* 5 Cal.3d at p. 137), is by nature a nebulous element, not an element subject to the type of direct proof by which the prosecution can establish the existence of, for example, a corpse or a stolen television. Unless the defendant admits the necessary intent, the defendant's mental state, encompassing any requisite mental element, must be proved by circumstantial evidence. Thus failure to instruct the jury that it must find a defendant intended, for example, to commit a killing during the course of another felony deprives that defendant of his right to have the prosecution prove *each* element of the offense to the trier of fact beyond a reasonable doubt. If the jury does not know what it must determine, no retrospective review of the evidence can establish the jury made the necessary factual determination despite the weight of other evidence probative of the defendant's guilt.

■ However, even the otherwise "reversible per se" standard recognized in *People* v. *Garcia, supra,* is subject to certain limited exceptions, one of which was first articulated by the Supreme Court in *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], where the court stated: "Thus, in some circumstances it is possible to determine that although an instruction . . . was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant . . . ." (See also *People* v. *Garcia, supra,* 36 Cal.3d at pp. 554-555.) In the instant case, the "element" erroneously excluded from the jury instruction is a firearm, an element significantly less ephemeral

than some requisite mental state. Taking into account the fairly minimal modification of the jury instruction which would have been required to comply with the statute, we find the trial court's error in instructing with the more general language of assault with a deadly weapon did not remove the issue of defendant's assault with a firearm "wholly from jury determination, . . . thus denying defendant the right to jury trial on the element of the charge." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 554.)

Defendant has relied upon *People* v. *Hopkins* (1983) 149 Cal.App.3d 36, 43 [196 Cal.Rptr. 609] for the premise that instructional error of the nature here complained of is subject to the "harmless beyond a reasonable doubt" standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Although *Hopkins* does expressly apply the *Chapman* test, the *Sedeno* test, above, is as rigorous, if not more so, than *Chapman,* and is the test more commonly applied in California cases which have considered errors in jury instructions omitting a necessary element of the offense.

In the instant case, there was no evidence whatsoever to suggest that defendant's assault, if any, on Holt and Armbrister was with anything other than a handgun. Holt testified she observed the gun and, based on her extensive experience with firearms, was able to give a definite description of the weapon. Although Holt could not ascertain whether or not the weapon was loaded, she did not believe it was a toy. Armbrister, equally well acquainted with firearms, described the same type of gun as had Holt and, because he was closer to defendant than Holt had been, was able to see the head of a bullet in the cylinder. Defendant himself took the stand and admitted the presence of a *gun* although defendant testified that the gun was a toy belonging to his seven-year-old son. Therefore, the *fact* of a firearm was not in dispute, only the nature of the firearm was left for the jury's determination.

In instructing the jury with respect to an assault with a deadly weapon, the trial court told the jurors that a deadly weapon was any "object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury." Since there was no evidence whatsoever that defendant attempted to throw the "toy" gun at either Holt or Armbrister or that he attempted to strike them with it (see, e.g., *People* v. *Orr, supra,* 43 Cal.App.3d 666), the jury in convicting defendant under the instructions given necessarily found: (1) the gun used was not a toy gun but a real one; (2) the gun was operable and thus defendant possessed the present ability to apply physical force to the person of another;[7] and (3) the instrument, i.e., the gun, was "used in such a manner

---

[7]The trial court properly instructed the jury pursuant to CALJIC No. 9.00 (4th ed. 1984 pocket pt.) defining assault.

as to be capable of producing, and likely to produce, death or great bodily injury." (CALJIC No. 9.03, *supra.*) Therefore, this court is not placed in the position of speculating or inferring about the deliberative process by which the jury reached its verdict. Defendant conceded a gun was present, and in determining the gun was a real gun and was operable, not a toy gun as defendant testified, the jury necessarily found that defendant had assaulted Holt and Armbrister with a firearm, satisfying the standard of *People* v. *Sedeno, supra,* 10 Cal.3d 703. (Compare those cases in which the reviewing court could *not* determine the jury had necessarily resolved a factual question adversely to defendant, including *People* v. *McElheny* (1982) 137 Cal.App.3d 396, 403-404 [187 Cal.Rptr. 39]; *People* v. *White* (1980) 101 Cal.App.3d 161, 169 [161 Cal.Rptr. 541]; *People* v. *Haney, supra,* 75 Cal.App.3d at p. 314.)

Finally, in connection with the concluding instruction, CALJIC No. 17.50, the trial judge in this case read *all* of the possible verdict forms to the jurors; for each count of assault with a firearm, the jury was instructed in part as follows: "Accordingly, as you may find and determine the facts to be, you may render one of the following verdicts as to Count Two:

"We, the jury in the above entitled action, find the Defendant, Edgar Charly Glover, guilty of violation of Section 245(a)(2) of the Penal Code, a felony, assault with a firearm, to wit: A handgun, upon Yvonne Holt, as charged in Count Two of the Information filed herein, . . ."

While these additional instructions obviate any possibility of prejudice in the instant case, they are *not* crucial. The determining factor is whether the evidence produced at trial establishes that the assault committed, if any, was by means of a firearm. Then, if a jury, having been properly instructed in the general language of CALJIC No. 9.03 concerning assault with a deadly weapon, convicts a defendant of assault with a firearm (§ 245, subd. (a)(2)) and there is *no* evidence from which the jury could have concluded that the assault was by means of any other deadly weapon, it will be clear that the jury resolved the factual question adversely to the defendant.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.