[No. A065469. First Dist., Div. Five. Apr. 7, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
YAYEHYERADE BEKELE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III C and D.

**COUNSEL**

Mara Carman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING, J.—**

## I. INTRODUCTION

Yayehyerade Bekele appeals from a judgment of conviction for armed robbery, assault with a firearm, and related offenses. We hold there was substantial evidence of armed robbery of a property owner's companion where the companion had implied authority to help stop a theft in progress, but there was no substantial evidence of assault with a firearm because there was no evidence that the firearm was loaded.

## II. FACTS AND PROCEDURE

Robert Jump was driving a front-end loader on a city street, with coworker Paco Fernandez as his passenger, in the course of their employment by the

San Francisco Water Department, when they saw Bekele burglarizing Jump's pickup truck, which was parked on the street. Jump said to Fernandez, "Let's stop" and "There is somebody in my truck." Jump stopped the front-end loader. Bekele was putting Jump's tape deck into a black backpack and removing speakers from the truck. According to Fernandez, Jump approached one side of the truck, while Fernandez ran to the other side.[1] Bekele emerged from the truck on Fernandez's side. Jump and Fernandez told Bekele to stop, and then Fernandez struck Bekele, dislodging a baseball cap from Bekele's head. Bekele ran off, carrying the backpack. Fernandez chased after him, yelling "Stop, drop the bag."

Fernandez followed Bekele to some railroad tracks, where Bekele turned and started pulling on his jacket. Fernandez stopped to see what Bekele was going to pull from the jacket. On the second tug, Bekele produced a firearm. He pointed the gun at Fernandez, with his arm fully extended, and said, "Don't." The gun was about four feet from Fernandez's face. Fernandez froze, thinking Bekele was going to shoot him in the face. Bekele ran off, and Fernandez turned back and yelled at some bystanders to call 911.

Meanwhile, Jump radioed his coworkers, and one of them picked up Fernandez in a water department truck. Driving around the area, they saw a nearby homeless encampment. The police arrived 15 or 20 minutes later and went to the encampment. There, the officers encountered Bekele and another man. As the officers were searching the site, one of them saw a backpack some 30 feet away. Bekele said, "That's mine." The officer retrieved the backpack; inside were items taken from Jump's truck, burglary tools, and a food stamp identification card in Bekele's name. The officer also retrieved the perpetrator's baseball cap, which bore the initial "B." It is unclear from the record whether the officer found the cap inside or next to the backpack.

The officers brought Bekele, and then his companion, to Jump and Fernandez, who said the companion was not the perpetrator and then identified Bekele. They also identified Bekele at trial.

The officers placed Bekele, handcuffed, in a police vehicle. One of them picked up the baseball cap found with the backpack and asked whether Bekele wanted "to wear your hat." Bekele replied, "Yeah. Will you put it on me[?]" The officer did so.

A jury convicted Bekele of robbery of Fernandez (Pen. Code, § 212.5), assault with a firearm upon Fernandez (Pen. Code, § 245, subd. (a)(2)), possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)), burglary

[1]Jump testified that he "got out for a second" and then returned to the front-end loader.

of Jump's truck (Pen. Code, § 459), and petty theft with a prior (Pen. Code, § 666), with use of a firearm in the robbery and assault (Pen. Code, § 12022.5, subd. (a)). Bekele admitted a prior prison term (Pen. Code, § 667.5, subd. (b)) for receiving stolen property (Pen. Code, § 496). The court imposed a three-year term for robbery, a concurrent term of two years for the firearm possession, a four-year enhancement for the firearm use, and a one-year enhancement for the prior prison term, for a total prison term of eight years. The court stayed sentencing for the other offenses pursuant to Penal Code section 654.

## III.  DISCUSSION

### A.  *Sufficiency of the Evidence of Robbery*

◼     Robbery is "the felonious taking of personal property *in the possession of another*, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211, italics added.) Bekele contends there was insufficient evidence that he robbed Fernandez because the stolen property was in the possession of Jump, not Fernandez, when the element of force or fear through display of the firearm occurred.[2]

The requisite possession, however, may be *constructive* rather than actual. (*People* v. *Estes* (1983) 147 Cal.App.3d 23, 26 [194 Cal.Rptr. 909].) "The victim need not own, possess, or even have the right to possess the property sought by the perpetrator." (*People* v. *Mai* (1994) 22 Cal.App.4th 117, 129 [27 Cal.Rptr.2d 141].) Thus, for example, ". . . a store employee may be a victim of robbery even though he does not own the property taken and is not in charge or in immediate control of the property at the time of the crime." (*People* v. *Estes, supra,* 147 Cal.App.3d at p. 26.) Likewise, a security guard has "constructive possession of the personal property he was charged with safekeeping," even if the guard lacks immediate control of the property. (*People* v. *Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552].)

A decision from the State of Washington provides a helpful explanation of the applicable rule: "A person must have an ownership interest in the property taken, *or some representative capacity with respect to the owner of the property taken,* or actual possession of the property taken, for the taking of the property to constitute a robbery." (*State* v. *Latham* (1983) 35 Wn.App. 862 [670 P.2d 689, 691], italics added.) In *Latham,* the defendants beat Larry

---

[2]The element of force or fear may occur either in the gaining of possession or, as here, in the carrying away. (*People* v. *Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8 [282 Cal.Rptr. 450, 811 P.2d 742].)

Beniusis and Barry Thompson into unconsciousness and then drove off in Beniusis's car. The court held there was no robbery of Thompson because "Thompson did not own the stolen car. He had no authority, *either express or implied,* from Benisius to act concerning the car, nor was the car in Thompson's possession when it was taken." (*Id.* at p. 692, italics added.)

Here, in contrast, the evidence demonstrated that Fernandez had a representative capacity with respect to Jump's property, in that he had implied authority from Jump to take action to prevent its theft. When Jump saw his truck being burglarized, he said to Fernandez, "Let's stop." The two of them acted in concert to interrupt the burglary: they simultaneously left the front-end loader to approach Jump's truck, and both told Bekele to stop. The obvious implication was that Jump wanted Fernandez to help safeguard Jump's property by putting a stop to the theft. Fernandez was acting in that representative capacity when he struck Bekele and then chased after him, yelling "Stop, drop the bag." Fernandez's position was analogous to that of the security guard who has constructive possession, though not immediate control, of the property he is charged with safekeeping.

Fernandez had constructive possession of Jump's property through Jump's implied grant of authority to help stop the theft. There was substantial evidence that Bekele robbed Fernandez.[3]

Bekele also claims the court erred by giving jury instructions which failed to require a finding of force or fear against the robbery victim, but allowed conviction based on force or fear against someone other than the robbery victim. This argument arises, and therefore falls, in connection with Bekele's argument that Fernandez was not in possession of Jump's property and thus was not a robbery victim. If, as we conclude, Fernandez was a robbery victim by virtue of his constructive possession of Jump's property, any such shortcoming in the instructions was certainly harmless, because the *only* use

---

[3]In a postbriefing letter and at oral argument, Bekele's counsel claimed support from the recent case of *People* v. *Galoia* (1994) 31 Cal.App.4th 595 [37 Cal.Rptr.2d 117]. In that case, Edward Galoia took beer and candy from a convenience store as the cashier was ringing up the goods. Mark Steadman, who was in the store collecting money from video games he had there, chased Galoia outside and asked him to stop. Galoia threatened to "kick his ass," and then Steadman was hit from behind by Galoia's companion. The appellate court held Steadman was not a robbery victim because he was not acting as an agent of the store, but simply as a "Good Samaritan." The court rejected the Attorney General's theory that Steadman was acting under the store's "implicit authorization," because ". . . no one from the store instructed Steadman to give chase, and there is no evidence Steadman was motivated by anything other than good citizenship." (*Id.* at pp. 597-598.) Bekele's case is fundamentally different. The owner of the burglarized truck, Jump, said to the robbery victim, Fernandez, "Let's stop," and the two of them then acted in concert to interrupt the burglary. Thus, unlike in *Galoia*, the victim had "implicit authorization" from the owner to give chase.

of force or fear occurred when Bekele pointed the firearm at Fernandez. There is no possibility whatsoever that the jury relied on force or fear against someone other than the robbery victim.

### B. *Sufficiency of the Evidence of Assault*

Next, Bekele contends there was insufficient evidence of assault with a firearm, because there was no evidence that his gun (which was never recovered) was loaded. He is right. "[P]ointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon. This is for the reason that there is no present ability to commit a violent injury on the person." (*People* v. *Orr* (1974) 43 Cal.App.3d 666, 672 [117 Cal.Rptr. 738]; accord, *People* v. *Sylva* (1904) 143 Cal. 62, 64 [76 P. 814]; *People* v. *Glover* (1985) 171 Cal.App.3d 496, 504, fn. 6 [217 Cal.Rptr. 340]; *People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346].) Absent any evidence that the gun was loaded, or that Bekele attempted or threatened to use it as a bludgeon, there was no proof of assault with a firearm.

The People's brief claims there was evidence that the gun was loaded because Bekele "worked the gun carefully out of his pocket," and "[t]he jury could have concluded that this care was prompted by appellant's desire not to shoot himself with a weapon he knew to be deadly." But there was no evidence that Bekele took such "care" with the weapon; Fernandez simply testified that Bekele "starting pulling on his jacket" and "on the second tug, out came the revolver." Nothing in Bekele's conduct as described by Fernandez implied any special care in the handling of the weapon or concern that he might shoot himself.

The People also cite *People* v. *Fain* (1983) 34 Cal.3d 350, 356 [193 Cal.Rptr. 890, 667 P.2d 694], for the proposition that Bekele could have used the gun as a bludgeon. In *Fain*, however, the defendant actually struck two victims with a gun (*id.* at p. 353), and thus his display of the gun to a third victim constituted a threat to bludgeon that victim as well. Here, in contrast, there was no evidence of a threat, or effort, to use the gun as a bludgeon. Bekele pointed the gun with his arm fully extended. He made no move to strike Fernandez with it. Fernandez thought Bekele was going to shoot him, not bludgeon him. Absent any effort or threat to use the gun as a bludgeon, this theory of assault with a firearm cannot apply.

The conviction for assault with a firearm must be stricken.[4] We therefore need not address Bekele's claims of instructional error as to the assault charge.

## C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgment is modified by striking the conviction for assault with a firearm, and is affirmed as modified.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied April 24, 1995, and appellant's petition for review by the Supreme Court was denied July 12, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

[4]The point is of little practical consequence, however, since the court stayed sentencing for the assault conviction pursuant to Penal Code section 654.

*See footnote, *ante*, page 1457.