Filed 11/3/15  P. v. McFarland CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY DEIONDRE McFARLAND,<br><br>    Defendant and Appellant. | B258928<br><br>(Los Angeles County<br>Super. Ct. No. KA103500) |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed as modified.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In a four count information filed by the Los Angeles County District Attorney, defendant and appellant Anthony Deiondre McFarland was charged with first degree residential burglary (Pen. Code, § 459; count 1),[1] grand theft of a firearm (§ 487, subd. (d)(2), count 2), and receiving stolen property (§ 496, subd. (a), count 4).[2] The information also alleged as to count 1 that the offense was a serious or violent felony requiring registration (§ 1170, subd. (h)(3)). It further alleged that appellant suffered two prior serious or violent felony convictions for assault in 2009 (§ 245) and first degree residential burglary in 2011 (§ 459), pursuant to the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) and served a prior prison term for a serious or violent felony conviction (§§ 667, subds. (a)(1) & (b), 667.5). Appellant pleaded not guilty and denied the special allegations.

The trial court granted appellant's motion to bifurcate the prior conviction allegations. The trial court subsequently advised appellant of his right to a jury, and he waived that right with respect to the prior conviction allegations.

Trial on the underlying offenses was by jury. Following presentation of the evidence, the trial court denied appellant's motion to dismiss pursuant to section 1118.1. The jury convicted appellant as charged.

Appellant made a *Romero*[3] motion to strike his prior strike convictions. In a sentencing memorandum, the prosecutor indicated that appellant faced "two strike priors." Following appellant's admission of the truth of the prior conviction allegations, the trial court found the allegations to be true and granted his *Romero* motion to dismiss one strike allegation.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The information also charged two additional defendants, Trevon Cinque Thomas (Thomas) and Terrell Dante Anderson (Anderson), neither of whom are parties to this appeal, with the same counts. Count 3, alleging dissuading a witness by force or threat, pertained only to Thomas.

[3]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

The trial court denied probation and sentenced appellant to a total term of 13 years in state prison. It credited him with 386 days of presentence custody.

Appellant timely appealed the judgment. He assigns three errors: (1) Insufficient evidence supports the conviction of count 2; (2) The trial court failed to obtain from appellant a waiver of his constitutional rights with respect to his prior convictions; and (3) The judgment should be modified to award appellant additional days of conduct credit.

We conclude that the evidence sufficiently supports appellant's conviction on count 2. We also conclude that appellant was properly advised of his constitutional rights with respect to his prior convictions and waived them. Thus, we affirm the judgment. However, the abstract of judgment must be corrected to reflect 287 days of custody credit.

## FACTUAL BACKGROUND

I. *Prosecution Evidence*

Barbara Decarbo (Decarbo) had lived on Willow Creek Road in Diamond Bar since 1966. She lived directly across the street from 24031 Willow Creek Road, where her neighbor, Gretchen Kunze-Fahrney (Kunze-Fahrney), lived.

On September 12, 2013,[4] before leaving her house at around 2:30 p.m., Kunze-Fahrney locked all of the doors. At around 3:00 p.m., Decarbo was driving on Willow Creek Road. She was almost home when she noticed a shiny black car with very dark, tinted windows and no rear license plate on the road ahead of her. After Decarbo pulled into her driveway and went inside, she saw the car again. The driver made a few U-turns and drove back and forth three or four times on Willow Creek Road.

Soon thereafter, Decarbo saw a Black man walking on the sidewalk near Kunze-Fahrney's home. He walked onto the driveway, up the steps to the house, and toward the front door. Instead of going up to the door, the man walked onto the pathway behind the

---

[4] The People's brief indicates that the crimes were committed on September 12, 2012. The record indicates otherwise. This date is significant for purposes of calculating appellant's presentence custody credits.

3

retaining wall in front of Kunze-Fahrney's house, to the back of the house. She also noted that the car was parked at the bottom end of the street, near North Del Sol Lane. Decarbo called 911 when she lost sight of the man behind Kunze-Fahrney's house, but still kept watch. She heard sirens and then saw the man she had seen earlier on the sidewalk run, with another man, up the steep hill behind Kunze-Fahrney's house. One of the men had a backpack.

Also at around 3:00 p.m., another neighbor, Mary Ann Odriozola (Odriozola), had stopped close to the parked black car, a Ford Taurus, and looked inside of it for about 35 to 45 seconds. She saw a man she later identified as Anderson in the driver's seat, a man she later identified as Thomas in the front passenger seat, and a man she later identified as appellant in the passenger seat behind Thomas. She did not recognize the car or any of the people inside of it.

After buying lunch, Odriozola returned home and saw a police car driving down Willow Creek Road. She pulled over and got out of her car in time to see appellant and Thomas run west from 24017 Willow Creek Road toward the house at 326 North Del Sol Lane. She told police that she recognized the men from the parked Ford Taurus and that the car did not have a license plate, but instead had a CarMax sticker or insert plate. She identified Anderson and the car at an in-field showup.

Within six to seven minutes, Decarbo saw the first police cars arrive and two helicopters flying over the area. She heard sheriff's deputies order the men to put their hands up. She went outside and looked up the hill to the next set of houses on North Del Sol Lane. The two men were trying to jump over the fence onto the balcony of the house directly behind Kunze-Fahrney's house.

Los Angeles County Deputy Sheriff Saul Saucedo arrived in the area and parked in front of the house located at 326 North Del Sol Lane. He saw a man come out of that house, go back in, and close the door. He then saw two Black men jump over a fence toward him onto the street side and jump right back into the backyard again of the same house on North Del Sol Lane. Deputy Saucedo relayed the information to another deputy

4

who had arrived, Aaron Schellar. While Deputy Saucedo got back into his patrol car, Deputy Schellar went into the backyard of the house located at 326 North Del Sol Lane.

At the North Del Sol Lane house, Deputy Schellar saw a black backpack on the ground in the backyard. A computer was protruding out from the backpack. Deputy Schellar walked four to eight feet from the backpack to the cinder block wall at the rear of the property line of the house. He looked over and down onto the property located 24017 Willow Creek Road. At first, Deputy Schellar only heard rustling noises on the right side of that house, but then he saw two men run from the side of the house across the grass. Deputy Schellar drew his gun and ordered the men to stop, put their hands up, and get on the ground. The men (appellant and Thomas) complied, and Deputy Schellar handcuffed both of them. Appellant and Thomas were out of breath and sweating.

Meanwhile, Deputy Saucedo had driven to Willow Creek Road and stopped at 24017. There, he saw one man (either appellant or Thomas) trying to jump the fence; he ordered the man to stop. Deputy Saucedo drew his gun and ordered the man to show his hands, but the man jumped back into the yard. After about two or three minutes at the front of the house, Deputy Saucedo spoke to the homeowner, who said that another officer was in the back of the house.

Salvador Apodoca (Apodoca), a peace officer and investigator with the San Bernardino County District Attorney's Office, received a call from a neighbor who wondered if Apodoca was home. The neighbor informed Apodoca that Decarbo thought someone was breaking into the house across the street from hers. Although Apodoca was not home, he went home. He drove westbound on Willow Creek Road. As he passed by Kunze-Fahrney's house, he saw that the side gate, which was always locked, was unlocked and open. Apodoca continued to drive on Willow Creek Road. At the intersection at North Del Sol Lane, he saw a black, late-model Ford Taurus, with darkly tinted windows, parked between two houses on North Del Sol Lane, near Willow Creek Road. After seeing that the car had "paper plates," Apodoca parked in Decarbo's driveway and knocked on her door. She was on the phone with 911. As they stood there, Apodoca saw two men run up the slope at the Kunze-Fahrney house. He relayed the

5

description of the men, including that one wore a hoodie, to the police dispatcher. Soon thereafter, Apodoca also relayed the description of the Ford Taurus and the direction of its travel, which at that point was eastbound on Willow Creek Road towards Golden Springs Drive.

Apodoca contacted a detective, Chris Garcia, at the front of Kunze-Fahrney's house, identified himself, and shared what he knew. As Apodoca and Detective Garcia went together to the back of the Kunze-Fahrney house, Apodoca noticed that the kitchen door had been "broken out"; he also did not hear the Kunze-Fahrney dog barking. Apodoca and Detective Garcia stayed in the backyard for about one minute until Apodoca saw two men run down the slope nearby. Apodoca advised deputies that he saw the men in the backyard at the house located at 24017 Willow Creek Road. When Apodoca got there, he saw that deputies had two suspects prone on the grass in the backyard. Apodoca identified appellant and Thomas at trial as the two men that the deputies had detained.

When appellant and Thomas were taken from the backyard to the patrol car, Apodoca warned them to think twice about committing burglaries in Diamond Bar. Appellant responded, indicating that he would be "back." Detective Garcia remembered that Thomas, not appellant had said, "'I'll be back.'"

Deputy Sheriff Shawn Moreno drove appellant to the Walnut Sheriff's Station. During the booking process, Deputy Moreno recovered a silver and gold watch from appellant's pants pocket. Kunze-Fahrney's first, middle, and last names were engraved on the watch.

At around 3:00 p.m., Deputy Sheriff Nicholas Deleon was dispatched to the area of North Del Sol Lane and Willow Creek Road. He was driving westbound on Willow Creek Road, a block from Kunze-Fahrney's house, when he spotted the dark-colored Ford Taurus with paper license plates going in the opposite direction. The driver, identified by Deputy Deleon as Anderson, was the sole occupant.

About 30 minutes later, when Kunze-Fahrney drove down Willow Creek Road to go home, her street was already closed off, but officers allowed her to park in her

6

driveway. Detectives escorted her through the house, which had been ransacked and left in disarray.

Deputy Schellar found and removed a Gucci fanny pack attached to Thomas's belt under his shirt. He also recovered a pair of black gloves from Thomas. Thomas had dropped one glove and was still holding one glove just before Deputy Schellar detained him. Appellant had also just thrown a pair of white socks onto the grass nearby. Another deputy, Afsoon Nafissi, collected and booked into evidence the following additional items: a black iPhone, earphones, and white ear pieces. Deputy Nafissi also opened the backpack and recovered a laptop computer, a men's Fossil brand watch, and a gun.

Kunze-Fahrney identified her watch, which had her name engraved on it, her husband's Fossil brand watch, which had been on a small desk by their bedroom door, her laptop computer, which she had left in the family room, and her husband's revolver, which he had kept in a closet shelf in the master bedroom. She did not recognize the backpack holding her computer.

Detective Garcia recovered additional items from the Ford Taurus: five cell phones, four gold metal pieces, a Car Max invoice in Anderson's name for some car repairs, and two watches.

Detective Garcia spoke separately to appellant and Thomas for about 15 to 30 minutes and to Anderson for about five to 10 minutes. Thomas identified his cell phone as one of the five found in the car. Detective Garcia allowed him to make a call from the phone. Appellant, Thomas, and Anderson were subsequently placed in a cell together, during which they discussed their conduct during the offenses. Their conversation was played for the jury.

II. *Defense Evidence*

Neither appellant nor Thomas presented any evidence.

Anderson testified at trial. Anderson, who had two prior felony convictions for possession of cocaine in 1990 and possession of marijuana in 2011, was an entertainer and musician. Although he initially lied to Detective Garcia when he denied knowing either appellant or Thomas, Anderson had actually known them for more than a year prior to September 12, 2013. On that day, Anderson was going to visit a friend in Moreno Valley, so he agreed to take appellant and Thomas to Diamond Bar. Thomas directed Anderson to exit the freeway onto Willow Creek Road. Anderson drove up and down that street a couple of times until Thomas told him to stop and he and appellant got out of the car. Anderson was about to leave, but realized that Thomas's phone was still in the car; so, Anderson turned around at the end of the block. Anderson did not know what appellant and Thomas were planning to do. He would not have given them a ride had he known that they were going to burglarize a house.

## DISCUSSION

I. *Appellant's conviction on count 2 is supported by sufficient evidence*

Appellant argues that his conviction for grand theft of a firearm (count 2) must be reversed because there was no evidence that he (as opposed to Thomas) possessed or took the firearm from Kunze-Fahrney's home.

"[T]he law is clear that a conviction of a criminal offense, including grand theft, may be based on circumstantial evidence." (*People v. Orr* (1974) 43 Cal.App.3d 666, 670.) Here, there is ample evidence that appellant participated in the burglary of Kunze-Fahrney's home. The issue presented is whether there is evidence that appellant (as opposed to Thomas) actually took the firearm. Whether as the actual perpetrator or as an aider and abettor, there is evidence that appellant took the firearm. (§ 31; *People v. McCoy* (2001) 25 Cal.4th 1111, 1120 ["When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator"]; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 529–530.)

8

Appellant complains that the aiding and abetting theory was not presented to the jury, and aiding and abetting instructions were not given for count 2. The appellate record shows otherwise. The jury was told that appellant, Thomas, and/or Anderson could be found guilty based on an aiding and abetting theory of the crime. The fact that the prosecutor argued that appellant and Thomas were the actual perpetrators does not preclude the jury from finding appellant guilty on the properly instructed aiding and abetting theory.

II. *Appellant was properly advised of his constitutional rights with respect to his prior convictions and he waived those rights*

"[A] defendant seeking to *plead guilty* is denied due process under the federal Constitution unless the plea is voluntary and knowing." (*People v. Mosby* (2004) 33 Cal.4th 353, 359 (*Mosby*).) Accordingly, the United States Constitution requires that a defendant knowingly and voluntarily waive his privilege against self-incrimination, to a jury, and to confront witnesses before a court may accept his guilty plea. (*Mosby*, *supra*, at p. 359.) By statute, a defendant must also knowingly and voluntarily waive the same rights before a court may accept his admission regarding prior felony convictions. (*Id.* at p. 360.)

Here, the trial court advised appellant that he had a right to a jury trial for his prior conviction allegations and that he could have the court determine the truth of the prior conviction allegations; appellant expressly waived those rights. But, appellant urges reversal because he was not expressly advised of his right to confront witnesses or to the consequences of his admissions. We cannot agree. He was expressly told about his right to a jury; he had just exercised his rights to remain silent and confront witnesses following a jury trial on the issue of guilt for his underlying offenses; and he had been previously convicted twice of other strike offenses. Under the totality of the circumstances (*Mosby*, *supra*, 33 Cal.4th at p. 360), we conclude that appellant's admission and waiver were voluntary and intelligent.

9

III. *Appellant should be awarded 287 additional days of custody credit*

Appellant accrued 337 days of custody credit for time actually spent in custody. In addition, the trial court awarded him 49 conduct credits under section 2933.1. Appellant contends that the trial court should have applied section 4019 when determining his conduct credits and awarded him an additional 288[5] days of custody credits. The People agree that section 4019 governs the calculation of appellant's custody credits; however, it submits that appellant is entitled to only an additional 168 days of presentence custody credits, not 288 days.

As the parties agree, section 4019, subdivision (f), governs the calculation of appellant's presentence custody credits. That statute provides: "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f).) Here, appellant spent 337 days in actual custody. Under "the two-for-two formula" set forth in section 4019, appellant was entitled to 336 days of conduct credit for his 337 days served. (*People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1362.) Appellant was only awarded 49 days of presentence credit. The abstract of judgment must be modified to add 287 days (336 – 49 = 287).

---

[5] In his opening brief, appellant requests an additional 288 days of conduct credits; in his reply brief, he requests an additional 287 days of conduct credits.

10

## DISPOSITION

The judgment is affirmed as modified.  The abstract of judgment shall be modified to reflect additional 287 presentence custody credits, for a total of 336 presentence conduct credits.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.



_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ

11