Filed 6/17/13  P. v. Wilkes CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B239694 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA068807) |
| v. | |
| DAVID WILKES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Kellogg, Judge.  Affirmed in part; reversed in part and remanded.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

David Wilkes (appellant) was convicted by a jury of carjacking (Pen. Code, § 215, subd. (a), count 1);[1] assault with a semiautomatic firearm (§ 245, subd. (b), count 2); possession of a firearm by a felon (former § 12021, subd. (a)(1), count 3); grand theft of an automobile with a prior conviction (§ 666.5, count 4); unlawful driving or taking of a vehicle with a prior conviction (§ 666.5, count 5); and possession of ammunition by a felon (former § 12316, subd. (b)(1), count 6).[2] He was sentenced to 46 years, 4 months in prison.

On appeal, appellant raises nine issues: (1) the evidence was insufficient to prove carjacking; (2) the evidence was insufficient to prove that he used an automatic handgun; (3) the trial court prejudicially erred in not instructing the jury on assault with a firearm as a lesser included offense of assault with a semiautomatic firearm; (4) his conviction for unlawfully driving or taking a vehicle must be reversed because it is a lesser included offense of grand theft of an automobile; (5) the consecutive sentence for grand theft of an automobile must be stayed pursuant to section 654; (6) the concurrent sentence for assault with a firearm and the firearm enhancement must be stayed pursuant to section 654; (7) the abstract of judgment and clerk's minutes must be amended to reflect the trial court's stay of the sentence for possession of ammunition by a felon pursuant to section 654; (8) the trial court abused its discretion in finding no mitigating factors in imposing the sentence; and (9) the abstract of judgment and clerk's minutes must be amended to reflect restitution and suspended parole revocation fines in the amount of $200 as orally pronounced by the trial court.

For the reasons set forth below, we affirm the judgment in part, reverse the judgment in part, and remand for resentencing.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Sections 12021 and 12316 were repealed as of January 2012.

## FACTUAL BACKGROUND

On August 31, 2011, Jose Aristizabal was driving a truck owned by his employer, Graffiti Control Systems. On his way to Graffiti Control Systems' truck yard, Aristizabal stopped at El Portal Bakery on the corner of Sherman Way and Coldwater Canyon Avenue in Los Angeles. He left the truck running with the keys in the ignition while he went inside the bakery.

While inside, Aristizabal saw two friends, Carlos Castreyon and Vicente Gomez.[3] After talking to them for a few minutes, Aristizabal heard an alarm or whistle that resembled the sound his work truck makes when it is put in reverse. He looked out of the bakery's front window and saw a Caucasian male with long hair, whom Gomez later identified as appellant, inside his truck. Aristizabal said to Castreyon and Gomez, "Hey, someone is taking – my car is being stolen." Aristizabal and Castreyon ran out of the bakery together and watched the truck leave the parking lot. Aristizabal pursued the truck on foot. At the same time, Gomez grabbed Castreyon's car keys, got into Castreyon's car, and pursued appellant and the truck.

As appellant drove out of the parking lot in Aristizabal's truck on to Sherman Way, he sideswiped a van. Aristizabal continued to chase after the truck on foot for about half a block down Sherman Way, yelling for appellant to stop. Once appellant ran the truck through a red light at the intersection at Sherman Way and Ethel Avenue, Aristizabal gave up his chase. At that moment, he saw a coworker driving by on Sherman Way. Aristizabal asked the coworker for help and got into the coworker's car to pursue the truck. As they were driving, Aristizabal called the police to report the theft.

While Aristizabal pursued appellant on foot, Gomez followed in Castreyon's car. Gomez stopped next to the truck and saw appellant's face. At the intersection of Wyandotte Street and Woodman Avenue, appellant stopped the truck and Gomez pulled up behind him. Gomez got out of Castreyon's car and approached the truck on foot. He

---

[3]     The record also refers to Vicente Gomez as Sebastian Gomez.

approached from the driver's side of the truck and opened the driver's side door. Appellant then drew a gun, which Gomez later testified was an "automatic" handgun, and pointed it at Gomez's chest. Gomez backed away from the gun and tried to use the truck for cover. Appellant then fired one shot, which missed Gomez.

Appellant immediately drove off in Aristizabal's truck. Terrified, Gomez remained standing in the street for thirty seconds. He returned to the bakery and called Aristizabal to tell him what had happened.

Several days after the incident, Gomez was riding in the passenger seat of Castreyon's car when he saw appellant walking on Sherman Way. Gomez approached a police car in a nearby 7-Eleven parking lot. He reported to Los Angeles Police Officers Ricardo Izquierdo and Anthony Ramirez what happened two days prior, and told them that he had just seen appellant. He described appellant's appearance and answered a number of the officers' questions. The officers then left the parking lot to look for appellant. Soon after, the officers stopped appellant on Sherman Way. They called Gomez to have him meet them in a nearby parking lot to conduct a field identification. Gomez identified appellant as the man who stole Arisitizabal's truck and later shot at him.

Gomez told Officer Izquierdo the location where appellant fired a gun. Officer Izquierdo and Officer Ramirez then returned to that location to search for bullet casings and other evidence. They scanned the area but found no evidence of the shooting or any reports of gunshots around the time of the shooting.

After appellant was arrested, Officer Izquierdo and a group of Los Angeles police officers conducted a search of appellant's loft located above a mechanic's garage on Coldwater Canyon Avenue. Inside the loft, the officers found a Department of Motor Vehicles printout containing appellant's information. Next to the stairs leading to appellant's loft, they found a large toolbox containing approximately 1,000 rounds of ammunition. According to Officer Izquierdo, most of the rounds found in the toolbox could be used in a semiautomatic firearm. They did not find a firearm.

4

Kenny Davison, a witness for the defense and sublessee of the mechanic's garage, testified that he had hired appellant and appellant had been staying in the upstairs loft since the beginning of August 2011. Davison used the garage to conduct his business as an automobile and motorcycle repair shop, but appellant was the only person who lived at that location. Davison subleased the garage and loft from George Harris, who owned a number of items in the garage, including the toolbox containing the ammunition. Davison did not know whether Harris left the toolbox unlocked but he testified that anyone who entered the garage had access to it. Davison admitted he had three prior felony convictions.

## PROCEDURAL BACKGROUND

Appellant was charged with carjacking in violation of section 215, subdivision (a) (count 1); assault with a semiautomatic firearm in violation of section 245, subdivision (b) (count 2); possession of a firearm by a felon in violation of former section 12021, subdivision (a)(1) (count 3); grand theft of an automobile with a prior conviction in violation of section 666.5 (count 4); unlawful driving or taking of a vehicle with a prior conviction of section 666.5 (count 5); and possession of ammunition by a felon in violation of former section 12316, subdivision (b)(1) (count 6).

As to count 1, the information alleged that appellant personally and intentionally used and discharged a firearm, a handgun, within the meaning of section 12022.53, subdivisions (b) and (c). As to counts 2, 4, and 5, the information alleged that in the commission of these offenses, appellant used a firearm, a handgun, within the meaning of section 12022.5, subdivision (a).

The information also alleged prior felony convictions as to counts 1 and 2 pursuant to section 667, subdivision (a)(1), section 667, subdivisions (b) through (i), section 1170.12, subdivisions (a) through (d), and section 1203, subdivision (e)(4). It alleged appellant had suffered three prior felony convictions for which he had served separate prison terms pursuant to section 667.5, subdivision (a). As to counts 3 through 6, the information alleged prior felony convictions pursuant to section 667, subdivisions

5

(b) through (i), section 1170.12, subdivisions (a) through (d), and section 1203, subdivision (e)(4).

Prior to trial appellant admitted the prior convictions alleged in counts 3 through 6

The jury found appellant guilty on all counts and found true the special allegations under former section 12022.5, subdivision (a) and former section 12022.53, subdivision (c). In a bifurcated trial, the trial court found true the prior conviction allegations within the meaning of section 667, subdivisions (a)(1), (b) through (i), section 1170.12, and the prior prison term allegations pursuant to section 667.5, subdivision (b).

The trial court imposed an aggregate sentence of 46 years and 4 months in prison. Appellant received 200 days of presentence custody and conduct credit.

## DISCUSSION

### I.     *Sufficient Evidence Supports Appellant's Carjacking Conviction*

Appellant first contends there was insufficient evidence to support his carjacking conviction under section 215, subdivision (a). We agree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Avila* (2009) 46 Cal.4th 680, 701.) In determining whether there was sufficient evidence to support a jury's finding, we must determine whether, after reviewing the entire record in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Ibid.*) We neither reweigh evidence nor reevaluate the credibility of witnesses. (*People v. Linbderg* (2008) 45 Cal.4th 1, 27.) "This standard applies whether direct or circumstantial evidence is involved." (*People v. Avila*, *supra*, 46 Cal.4th at p. 701.)

Appellant contends the evidence adduced at trial could not sustain his carjacking conviction. To be convicted of carjacking under section 215, subdivision (a), the accused must take "a motor vehicle in the possession of another, from his or her person or

6

immediate presence . . . against his or her will and with the intent to either permanently or temporarily deprive the person . . . of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).) Appellant asserts his carjacking conviction must be overturned because Gomez did not have actual or constructive possession of the truck, and therefore, could not be a proper victim of carjacking.

A conviction for carjacking requires that the accused take the stolen vehicle from a person who was in some sense in possession of that vehicle. (*People v. Scott* (2009) 45 Cal.4th 743, 749; see also *People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1131 ["While a distinct crime from robbery, the elements and statutory language of carjacking are analogous to those of robbery, and the 'taking' language of the carjacking statute is framed in identical language to the robbery statute"].) Therefore, a person from whose immediate presence the vehicle was taken is not a proper carjacking victim unless he was in possession of the vehicle. (*People v. Scott*, *supra*, 45 Cal.4th at p. 749.) However, neither ownership nor physical possession is required to establish the element of possession for the purposes of the carjacking statute. (*Ibid.*) Constructive possession is sufficient to establish this element. (*Id.* at pp. 749-750.)

"[A] person who has the right to control property has constructive possession of it." (*People v. Scott*, *supra*, 45 Cal.4th at p. 750.) Generally, courts have required that the alleged victim of the carjacking or robbery have a "special relationship" with the owner of the property such that the alleged victim had authority or responsibility to protect the stolen property on behalf of the owner. (*Ibid.*)

Appellant contends that Gomez did not have constructive possession of Aristizabal's truck at the time appellant fired his gun at Gomez. Appellant relies on two cases, *People v. Galoia* (1994) 31 Cal.App.4th 595, and *Sykes v. Superior Court* (1998) 30 Cal.App.4th 479.

In *Galoia*, Steadman, the alleged victim, owned a number of video games located inside a convenience store. (*People v. Galoia*, *supra*, 31 Cal.App.4th at p. 597.) While Steadman was inside the store collecting money from his games, the defendant stole a number of items from the store, including a pack of beer and a pack of cigarettes. (*Id.* at

7

pp. 596-597.)  Without being asked for help by the store's owner, or any of its employees, Steadman gave chase to the defendant.  (*Id.* at pp. 597-598.)  Outside the store, he asked the defendant to stop.  (*Id.* at p. 597.)  The defendant told Steadman he was going to "kick his ass."  (*Ibid.*)  Steadman responded, "come on" and was then hit from behind by the defendant's companion.  (*Ibid.*)

There, the court held Steadman was not a proper victim of robbery.  (*Ibid.*)  The court emphasized the fact that Steadman was neither the owner, nor an employee, of the store, and that neither the store owner, nor the store employees, asked Steadman for help.  (*Id.* at pp. 597-598 ["Steadman was not an employee or agent of the convenience store . . . [and] no one from the store instructed Steadman to give chase, and there is no evidence Steadman was motivated by anything other than good citizenship"].)  Rather, Steadman merely acted as a "Good Samaritan," which California law does not recognize as creating a sufficient relationship with the property's owner for purposes of robbery and carjacking.  (*Ibid.*; see also *People v. Sykes*, *supra*, 30 Cal.App.4th at p. 484.)

In *Sykes*, the court held that a security guard who worked for a business located across the street from the burglarized store was not a proper victim for purposes of the robbery statute.  (*People v. Sykes*, *supra*, 30 Cal.App.4th at pp. 480-484.)  There, two security guards employed by the business across the street from the burglarized store witnessed the defendant steal a saxophone from that store.  (*Id.* at p. 481.)  One security guard witnessed the defendant break into the store.  (*Ibid.*)  A second security guard witnessed the defendant leave the store with the saxophone.  (*Ibid.*)  The second security guard approached the defendant and told him to "halt."  (*Ibid.*)  The defendant approached the security guard and the security guard drew his revolver.  (*Ibid.*)  The defendant then turned and ran.  (*Ibid.*)  The security guard eventually caught the defendant and recovered the saxophone.  (*Ibid.*)  During the pursuit and ensuing struggle, the security guard suffered minor wounds.  (*Ibid.*)

The court held the security guard was not a proper victim of robbery because he was not an employee of the burglarized store.  (*People v. Sykes, supra,* 30 Cal.App.4th at p. 484.)  Rather, the security guard was merely acting as a neighbor and good citizen

8

seeking to catch a criminal. (*Ibid.*) The security guard was neither employed, nor directed to help, by the storeowner. (*Id.* at p. 481.) The security guard acted on his own volition and was never granted implied authority to recover the store's property. (*Id.* at pp. 481-484.) There was no special relationship between the security guard and the storeowner sufficient to give the security guard constructive possession over the stolen property. (*Id.* at p. 484.)

The People rely on *People v. Bekele* (1995) 33 Cal.App.4th 1457, disapproved on another point in *People v. Rodriguez* (1999) 20 Cal.4th 1, 13-14, to support their contention that Gomez was a proper victim for purposes of the carjacking statute. In *Bekele*, a man named Jump and his coworker were driving a front-end loader during the course of their employment when one of them, Jump, spotted the defendant burglarizing his truck. (*People v. Bekele*, *supra*, 33 Cal.App.4th at pp. 1459-1460.) Jump said to his coworker, "Let's stop . . . [t]here is somebody in my truck." (*Ibid.*) The defendant emerged on the side the coworker approached from. (*Ibid.*) Both men told the defendant to stop. The defendant ran off and the coworker chased after him. The defendant then pulled a gun from his jacket, pointed it at the coworker and said, "Don't." (*Ibid.*)

The court in *Bekele* held the coworker was a proper victim for purposes of the robbery statute. (*People v. Bekele*, *supra*, 33 Cal.App.4th at p. 1462.) The court recognized, "[a] person must have an ownership interest in the property taken, *or some representative capacity with respect to the owner of the property taken . . .* for the taking of the property to constitute a robbery." (*Ibid.*) The court found the coworker had a representative capacity with respect to Jump's property because he had implied authority to help prevent the robbery. (*Ibid.*) There, Jump saying, "Let's stop," and the two of them subsequently pursuing the defendant at the same time led to the implication that Jump wanted the coworker to help protect his property. (*Ibid.*) This call for help gave rise to the coworker's implied authority to protect Jump's property, which created a sufficient special relationship for purposes of the burglary statute. (*Ibid.*)

Here, Aristizabal never asked nor instructed Gomez for help. He merely exclaimed that his truck was being taken. Gomez, a friend, but not a coworker, was

9

acting as a good citizen but did not have a special relationship necessary to establish constructive possession. We therefore reverse the carjacking conviction.

## II.     *Sufficient Evidence Supports Appellant's Semiautomatic Firearm Conviction*

Appellant next contends there was insufficient evidence to show that he fired a semiautomatic firearm. Section 17140 defines a "semiautomatic pistol" as a "pistol with an operating mode that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger." In challenging the jury's finding that he used a semiautomatic firearm, appellant makes the following arguments: (1) the weapon was fired only once; (2) Gomez, the only eyewitness, merely testified that the gun was not a revolver and that it had a silver handle; (3) Gomez had never held a gun before, and was only familiar with them through movies; (4) although there was semiautomatic ammunition found outside appellant's living quarters, there was no evidence that appellant actually fired a semiautomatic pistol; and (5) no casings from the gun were found at the scene of the shooting or in Aristizabal's truck. Appellant's challenge lacks merit.

In California, the trier of fact, not the appellate court, weighs evidence and determines a witness's credibility. (*People v. Linbderg*, *supra*, 45 Cal.4th at p. 27.) Therefore, on appeal, this court cannot reweigh evidence or reevaluate the credibility of a witness. (*Ibid.*) Appellant merely challenges the weight of the evidence—the lack of casings found at the scene of the shooting and Gomez's description of the weapon—and the credibility of the witness—the extent of Gomez's familiarity with guns.

The testimony of a lay witness is sufficient to establish the nature of a firearm. (*People v. Haynes* (1984) 160 Cal.App.3d 1122, 1136, fn. 7.) Here, there was sufficient evidence from which the jury could have found beyond a reasonable doubt that appellant used a semiautomatic firearm to shoot at Gomez. (See *People v. Avila*, *supra*, 46 Cal.4th at p. 701.) Gomez testified that appellant shot at him with an "automatic" firearm. He believed this was so because he could tell the gun was not a revolver. Additionally, the police found hundreds of semiautomatic rounds of ammunition in an unlocked toolbox directly outside of appellant's living quarters. Further, appellant offered no evidence at

trial to contradict the conclusion that he used a semiautomatic firearm, and his trial counsel did not cross-examine Gomez about the gun. Therefore, there was substantial evidence from which the jury could have concluded beyond a reasonable doubt that appellant used a semiautomatic firearm when he shot at Gomez. (See *People v. Avila*, *supra*, 46 Cal.4th at p. 701.)

## III. The Trial Court's Decision To Not Instruct the Jury on the Lesser Offense of Assault with a Firearm Was Not Error

Appellant alleges the trial court prejudicially erred when it did not instruct the jury on assault with a firearm as a lesser necessarily included offense of assault with an automatic firearm.

"A trial court has a sua sponte obligation to instruct the jury on any uncharged offense that is lesser than, and included in, a greater charged offense, but only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense." (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.) "An uncharged offense is included in a greater charged offense if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), *or* (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*Ibid.*; italics in original.) Because there is no substantial evidence in the record to show the jury would have convicted appellant of only the lesser firearm charge had it been instructed on it, the trial court did not err.

As indicated above, there is substantial evidence to show appellant used a semiautomatic firearm when he fired at Gomez. Gomez, the only eyewitness, testified that appellant fired at him with an "automatic" handgun. The prosecution also presented evidence showing that appellant had easy access to a large amount of semiautomatic ammunition. Appellant never contradicted this evidence at trial. Nor was there any evidence that another type of gun was used or recovered. (*People v. Breverman* (1998) 19 Cal.4th 142, 155 [a trial court has no obligation to instruct on a lesser-included offense

11

when there is no evidence that the offense was less than that charged].) In light of the lack of sufficient evidence that the crime was less than that charged, there was no error.

## IV. *Appellant's Conviction for Unlawfully Driving or Taking a Vehicle Must Be Reversed*

Appellant contends, and the People agree, that the conviction for unlawfully driving or taking a vehicle must be reversed. "In California, a single act or course of conduct by a defendant can lead to convictions 'of *any* number of the offenses charged.'" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) However, "a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*Ibid.*) "If a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

Under California law, unlawful driving of a vehicle under Vehicle Code section 10851 is a lesser-included offense of grand theft of an automobile under section 487. (*People v. Barrick* (1982) 33 Cal.3d 115, 128; *People v. Buss* (1980) 102 Cal.App.3d 781, 784.) Therefore, it was error to convict appellant of both offenses. Appellant's conviction for unlawful driving of a vehicle in count 5 is reversed.

## V. *Sentencing*

The court sentenced appellant as follows:

On count 1, the carjacking, imposed the high term of nine years, doubled it pursuant to the strike prior for 18 years, and added a 20-year consecutive term pursuant to section 12022.53, subdivision (c) for a total of 38 years. Then it added a consecutive term of five years for the section 667, subdivision (a)(1) prior, for a total of 43 years.

On count 2, the assault with a firearm, it sentenced appellant to 33 years to run concurrent to count 1. The 33 years was computed as follows: a high term of nine years, doubled for the prior felony strike to 18 years, a high term of 10 years for the section 12022.5, subdivision (a) enhancement, for a total of 28 years, plus five years pursuant to the section 667, subdivision (a)(1) prior, for a total of 33 years.

12

On count 3, the possession of a firearm by a felon, the court imposed a consecutive term of one year, four months. This was computed by taking one-third the mid-term (8 months), doubled for the strike prior to equal one year, four months.

On count 4, grand theft, the court imposed a two-year consecutive term, consisting of one-third of the mid-term (one year), doubled for the strike prior, to equal two years.

On count 5, the unlawful taking of a vehicle, the court sentenced appellant to two years stayed, computed by taking one-third the mid-term (one year), doubled for the strike prior.

On count 6, the possession of ammunition, the court imposed a concurrent term of two years.

The total sentence imposed was 46 years four months.

Appellant raises several contentions with respect to sentencing.

*A. Section 654*

Section 654 bars multiple punishment for multiple acts where those acts constitute an indivisible course of conduct with a single criminal objective and intent. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Whether there was a single course of conduct is a question of fact for the trial court and we uphold its findings on appeal when they are supported by substantial evidence, viewing the evidence in the light most favorable to the prosecution. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Appellant presents two separate questions with respect to section 654. First, whether the auto theft was a separate event from the carjacking, and second, whether an assault with the firearm could be imposed in addition to the carjacking count. Because we have determined that the carjacking count should be reversed we need not address these contentions.

*B. The Stay of the Sentence for Possession of Ammunition by a Felon Pursuant to Section 654*

Appellant asserts the trial court stayed his sentence on count 6 for possession of ammunition by a felon pursuant to section 654, and therefore, the abstract of judgment and the clerk's minutes must be corrected to reflect the stay. The People contend the

13

record is unclear and does not indicate whether the sentencing judge intended to stay appellant's conviction for possession of ammunition by a felon.

At the sentencing hearing, the trial court stated: "Count six, the court already deemed as being 654 . . . I said concurrent. Even though I found it to be a 654 in the 12022.53(c) or the 12022.5, I sentenced it concurrent in case I am incorrect on the 654 issue."

There was no affirmative evidence of appellant's ownership of the multiple rounds of ammunition in the garage toolbox. As for the ammunition used in the shooting, there is no justification for the imposition of a separate sentence. (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138 ["To allow multiple punishment for possessing ammunition in a firearm would, in our judgment, parse the [defendant's] objectives too finely"].) Therefore, on remand, the court should stay appellant's sentence on count 6 pursuant to section 654.

### C. Imposition of the Upper Term

Appellant next contends the trial court abused its discretion when it found no mitigating circumstances in determining his sentence. In determining the sentence, the trial court had before it the details of the present case, appellant's criminal history (three prior convictions), and both parties' sentencing memoranda. (See § 1170, subd. (b) [in determining the appropriate sentence, the court may consider the record in the case, reports about the defendant, statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing].) After hearing arguments from the prosecution and the defense, the trial court explained its sentencing decision. It stated:

> I looked at this case and just could not, once again, understand, based on your record, based on everything else – to me, everything in your life appears to be either drug driven or close. And taking this truck is a crime of opportunity. Don't believe that you were hanging out at the panaderia waiting to get somebody in a bakery truck and that you were taking the bakery truck to survive based on the load of the bakery truck . . . . Thinking about how Mr. Gomez, on behalf of his friend, chased you down

14

through the streets, got up to your car, took a good look, and then wet his pants upon receiving a shot from a pistol that you possessed. . . . It was absolutely scary for him, because one never knows. A bullet going through someone is not as pretty as the movies or television make it . . . . [L]ooking at this case, *I can't find anything that would be a factor in mitigation. I looked. I did think very seriously, long and hard on count one, because it was an unusual circumstance . . . had it not been for the use of the weapon and the manner in which it was used, I would have been satisfied that this was a mid term case. Even if it was just used to scare someone away, the fact that a weapon was fired and fired in the direction of Mr. Gomez, it took it from that mid term to a high term.* (Italics added.)

The court also referred to the sentencing memoranda filed by the parties.

Appellant contends the court erred because it did not consider his mental health history as a mitigating fact. We also note the court relied on appellant's use of a firearm to both aggravate and enhance the sentence on the primary count, the carjacking. However, we are reversing the conviction for carjacking and therefore must remand the matter for resentencing on that count.

### D. The Minute Order and Abstract of Judgment Should Be Modified to Reflect the Fines that the Trial Court Imposed Orally

At the sentencing hearing on February 22, 2012, the judge orally imposed a mandatory restitution fine of $200 pursuant to section 1202.4, subdivision (b), and a parole revocation fine of $200 pursuant to section 1202.45. However, the abstract of judgment and sentencing minutes reflect a mandatory restitution fine of $240, and a parole revocation fine of $240.

Both parties agree that the minute order and abstract of judgment should be modified to reflect the fines that the trial court imposed orally.

"An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v.*

15

*Zackery* (2007) 147 Cal.App.4th 380, 385.) Here, the trial court's oral pronouncement of the $200 restitution and parole revocation fines controls. Therefore, the abstract of judgment should be amended to reflect a mandatory restitution fine of $200 and a parole revocation fine of $200.

## DISPOSITION

The convictions on count 1 and count 5 are reversed and the sentences on those counts are stricken. The convictions on the remaining counts are affirmed. We remand the matter for resentencing in accordance with the directions set forth in this opinion.

The clerk of the superior court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                    **ZELON, J.**