Filed 7/30/14  P. v. Avalos CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B246272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA398202) |
| v. | |
| FRANCISCO AVALOS, | |
| Defendant and Appellant. | |
| In re FRANCISCO AVALOS, | B254335 |
| on Habeas Corpus. | (Los Angeles County Super. Ct. No. BA398202) |

APPEAL from a judgment of the Superior Court of Los Angeles.  Gail Ruderman Feuer, Judge.  Affirmed as modified.

ORIGINAL PROCEEDING; petition for writ of habeas corpus.  Gail Ruderman Feuer, Judge.  Petition denied.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Francisco Avalos appeals from a judgment entered after a jury found him guilty of two counts of assault with a firearm and two counts of criminal threats (against two victims), and one count of assault by means likely to produce great bodily injury. The jury also found true firearm enhancement allegations on four counts and a great bodily injury enhancement on one count. The trial court sentenced him to 20 years and eight months in prison. On appeal, Avalos contends (1) there is insufficient evidence establishing he made a criminal threat against victim Oscar Soto, (2) the trial court should have stayed the sentence on both criminal threats counts under Penal Code section 654,[1] and (3) his convictions for assault with a firearm must be reversed because there is insufficient evidence demonstrating the gun he used was loaded. For the reasons discussed below, and with a concession by the Attorney General, we modify the judgment to reflect the sentence on the criminal threats count against Oscar Soto (count 4) is stayed. We affirm the judgment as modified.

In the petition for writ of habeas corpus, which we consider with the appeal, Avalos contends his right to a fair trial was violated because the trial court admitted into evidence two photographs of him which show his tattoos. We deny the petition because Avalos has not established a prima facie case for relief.

## BACKGROUND

On May 28, 2012, the date of the incident, Avalos and victim Oscar David Parada were neighbors at an apartment complex in Montebello. The other victim, Oscar Soto, was visiting Parada at his apartment that evening. Soto parked his car in a garage downstairs from Parada's apartment. Around 11:00 p.m., when Soto was ready to leave, his car would not start because the battery was dead. He and Parada pushed the car partway out of the garage so they could jumpstart it.

At that point, Avalos drove into the driveway and parked. He was with another man. Avalos could not park the vehicle in the assigned space for his apartment because there was a Jeep blocking the space. Parada's girlfriend's father, who lived with Parada,

---

[1] Further statutory references are to the Penal Code.

2

drove a Jeep.  Avalos exited the vehicle, approached Parada, snapped his fingers, and said, "'Hey, David.'"  When Parada responded, Avalos asked Parada if the Jeep blocking the parking space belonged to Parada's girlfriend's father.  Parada pointed out his girlfriend's father's Jeep was parked inside the garage in their assigned parking space.  Avalos walked back toward the Jeep which was blocking his parking space.

Avalos took off his hat and the long sleeve shirt he was wearing over a tank top, revealing numerous tattoos on his head, neck and arms.  He placed his keys and a bag he was carrying on top of the Jeep that was blocking his parking space.  He walked toward Soto.  Soto observed that Avalos had "strong" shoulders and "was very aggressive looking."

Avalos stood right next to Soto, said, "'Stay out of it,'" and pointed a silver revolver at Soto's face.  Soto heard the revolver's cylinder click.  Soto felt "very frightened."  He yelled, "'No,'" turned his body, shut his eyes, and covered his face with his arm.

Avalos pointed the gun at Parada.  Parada shouted, "'No, what are you gonna do?'"  Parada was afraid Avalos was going to shoot him right then.  Avalos said, "'David, I have something for you.'"  Avalos punched Parada in the face with his left hand, while holding the gun in his right hand.  Parada made a motion which caused Avalos to drop the gun—Parada crossed his hands and pushed them outward, hitting the gun with his hands.  Avalos continued to punch Parada.

Meanwhile, the other man who had arrived with Avalos was pointing another gun at Soto and telling him, "'Don't move, stay there.'"  He also told Soto to be quiet.  Eventually, that man told Soto he could leave, but warned him not to call the police.  Soto fled from the garage and knocked on several apartment doors.  No one would let him in so he hid behind the apartment building.

Avalos picked up the gun, put it in his pocket, and resumed hitting Parada.  Parada backed up and covered his face.  Avalos told him, "'Stay away from my family.'"  Parada responded, "'Please . . . don't hit me.  What would I do to you[?]  I do respect you.  I do nothing to you.'"  Avalos continued to hit Parada.

3

Avalos reached for the gun in his pocket. Parada grabbed his arm, hoping someone would come help him before Avalos retrieved the gun. Avalos grasped the gun, but he dropped it again. Parada heard people screaming. Avalos's girlfriend and her mother came down from the apartment they shared with Avalos. Avalos's girlfriend's mother shouted, "'What are you doing? Why are you hitting David? He do nothing to you.'"

Avalos yelled, "'David, if you talk to the police, you know what's up." Avalos punched Parada three more times then told him, "'If you talk to the police, you know we'll kill you, you motherfucker.'" Avalos walked away, holding the gun. He called back, "'We cool, right, David? We cool.'" Avalos drove off.

Parada went to his apartment. He noticed he was bleeding from his nose and his mouth. He dialed 911 and told the operator he did not know if he had been shot because he was bleeding "'everywhere.'" Parada's girlfriend noticed Parada's lip was bruised and appeared "torn apart." She also observed the right side of his face was swollen and he had a bruise on the back of his head which "felt like a ball."

Parada reached Soto on his cell phone about 25 minutes after Soto fled. Parada told Soto the police had arrived. Soto indicated he did not want to come out of hiding because he was still afraid. Parada told him there were helicopters looking for Avalos. That made Soto feel "more confident," so he returned to the scene and spoke with an officer.

That night, Parada was unable to eat due to his injuries, and he had trouble sleeping because he had a severe headache. He woke the next morning feeling dizzy. When he looked in the mirror, he did not recognize himself due the bruising and swelling on his face. Parada testified he still had headaches sometimes, up to the time of trial, that he attributed to the beating he received from Avalos.

Avalos testified at trial and also called his girlfriend and her mother in his defense. Avalos admitted he engaged in a physical altercation with Parada, but denied he had a gun and denied he made any threats to Soto or Parada. Avalos indicated he was angry with Parada on May 28, 2012 because, earlier that day at a barbecue in Avalos's garage,

4

Parada indicated to Avalos's girlfriend that he wanted to have sex with her friend, another guest at the barbecue. Avalos felt Parada had been disrespectful to him and his girlfriend.

The jury found Avalos guilty of assault with a firearm on Parada (§ 245, subd. (a)(2); count 1), making a criminal threat against Parada (§ 422; count 2), assault with a firearm on Soto (count 3), making a criminal threat against Soto (count 4), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 5). On counts 1 through 4, the jury found true the special allegation that Avalos personally used a firearm. (§ 12022.5, subd. (a).) On count 5, the jury found true the special allegation that Avalos personally inflicted great bodily injury on Parada. (§ 12022.7, subd. (a).)

The trial court sentenced Avalos to 20 years and eight months in prison. On count 1, the court imposed the upper term of four years, plus 10 years for the firearm enhancement and one year for the prior prison term (§ 667.5, subd. (b)) alleged in the information and found true by the court. On counts 2 and 4, the court imposed identical consecutive terms of eight months (one-third the middle term). The court imposed and stayed the firearm enhancements on these counts. On count 3, the court imposed a consecutive term of two years: one year for the offense plus 16 months for the firearm enhancement (one-third the middle term). On count 5, the court imposed a consecutive term of two years: one year for the offense plus one year for the great bodily injury enhancement (one-third the middle term).

## DISCUSSION

### I.     Appeal (B246272)

#### A.  Sufficiency of evidence of criminal threat against Soto (count 4)

Avalos contends there is insufficient evidence demonstrating he made a criminal threat against Soto within the meaning of section 422.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a

5

reasonable doubt.  [Citation.]  The federal standard of review is to the same effect:  Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citation.]  The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  [Citation.]  . . .  "'"'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]"'  [Citation.]"  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Under section 422, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Avalos contends there is insufficient evidence establishing two elements of the crime—an unambiguous threat to kill or harm Soto and reasonable sustained fear by Soto.

**The threat**

Avalos argues he did not make an unambiguous threat to kill or harm Soto in that the phrase "Stay out of it" is not "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," as required under the criminal threats statute.  (§ 422, subd. (a).)

6

He asserts "the phrase was not a verbal threat but only a part of a course of conduct resulting in an assault with a deadly weapon."

"[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) "[I]n this case the jury was free to interpret the words spoken from all of the surrounding circumstances of the case." (*Id*. at p. 1341.)

Substantial evidence demonstrates:  After asking Parada about a vehicle blocking his parking space, Avalos took off his hat and long sleeve shirt, shed other items from his person, and approached Soto in an aggressive manner.  Avalos stood right next to Soto, said, "'Stay out of it,'" and pointed a revolver at Soto's face.  Soto heard the revolver's cylinder click.  Soto felt "very frightened."  He yelled, "'No,'" turned his body, shut his eyes, and covered his face with his arm.

Avalos's words conveyed a criminal threat under the circumstances—stay out of my problem with Parada, and the confrontation I am about to have with him, or I will shoot you.

Avalos emphasizes he and Soto had no history between them, and Avalos's associate told Soto he could leave the area.  These facts do not negate the threat.  Avalos let Soto know if Soto interfered in his conflict with Parada, Avalos would shoot him.

**Sustained fear**

Avalos also argues "there was a lack of substantial evidence that Oscar Soto was in reasonably sustained fear."  Not so.

Soto testified he felt very frightened when Avalos made the threat, and his exclamation ("'No'") and body language (turning his body, shutting his eyes, and covering his face with his arm) indicated as much.

7

"As used in the statute [§ 422], 'sustained' has been defined to mean 'a period of time that extends beyond what is momentary, fleeting, or transitory. . . .'" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 808.)

Substantial evidence demonstrates Soto remained in fear even after Avalos's associate told him he could leave. Soto hid behind the apartment building and indicated he was too frightened to come out of hiding even when Parada called him and told him the altercation was over. Only after Parada told him the police were there and helicopters were looking for Avalos, did Soto feel comfortable returning to the scene.

Soto's sustained fear was reasonable. Avalos threatened to shoot him if he did not stay out of Avalos's conflict with Parada. Before he fled and hid, Soto saw Avalos turn the gun on Parada.

For the foregoing reasons, we reject Avalos's challenge to the sufficiency of the evidence supporting his conviction for making a criminal threat against Soto.

**B. Sentencing on criminal threats counts (counts 2 & 4)**

Avalos contends the trial court violated section 654's prohibition on multiple punishment when it imposed consecutive terms on the two counts of criminal threats. He asserts "the evidence presented established that assault with a deadly weapon (count 1) and making a criminal threat (count 2) constitute an indivisible transaction with one intent and object and one victim. Further, the evidence also established that assault with a deadly weapon (count 3) and making a criminal threat (count 4) constitute an indivisible transaction with one intent and objective and one victim."

Section 654, subdivision (a), provides in pertinent part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d

8

11, 19.) "On the other hand, if the defendant entertained multiple criminal objectives that were independent and not incidental to each other, he or she 'may be punished for each statutory violation committed in pursuit of each objective' even though the violations were otherwise part of an indivisible course of conduct." (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.) The purpose of section 654 is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Meeks* (2004) 123 Cal.App.4th 695, 705.)

The Attorney General concedes, and we agree, the trial court should have stayed the sentence for the criminal threat against Soto. The evidence demonstrates Avalos entertained one criminal objective in making the threat against Soto and assaulting Soto with the firearm—to stop Soto from interfering in his conflict with Parada. Accordingly, we modify the judgment to reflect the sentence on count 4 is stayed.

We disagree with Avalos's assertion the assault with a firearm on Parada and the criminal threat against Parada arose from an indivisible course of conduct. Substantial evidence demonstrates Avalos assaulted Parada with a firearm because he was angry with Parada and wanted Parada to stay away from his family. He threatened Parada with death or great bodily injury to stop Parada from reporting the assault and beating to the police. Avalos entertained multiple criminal objectives and may be punished accordingly. The trial court properly imposed a consecutive term on count 2.

### C. Sufficiency of evidence of convictions for assault with a firearm

Avalos contends his convictions for assault with a firearm must be reversed because there is insufficient evidence the gun he used was loaded. We apply the substantial evidence standard of review outlined above.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "A long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person." (*People v. Rodriguez*, *supra*, 20 Cal.4th at p. 11, fn. 3.) "'[P]ointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon' because 'there is no present

9

ability to commit a violent injury on the person.' [Citations.]" (*People v. Bekele* (1995) 33 Cal.App.4th 1457, 1463, disapproved on another ground in *People v. Rodriguez*, *supra*, 20 Cal.4th at p. 14.)

"California courts have often held that a defendant's statements and behavior while making an armed threat against a victim may warrant a jury's finding the weapon was loaded." (*People v. Rodriguez*, *supra*, 20 Cal.4th at p. 12.) The jury's finding in this case is based on substantial evidence.

Avalos told Soto to stay out of his conflict with Parada and pointed a gun at his face. Soto heard the revolver's cylinder click. Avalos also pointed the gun at Parada. Later, while beating Parada, Avalos tried to retrieve the gun from his pocket. After assaulting Parada with the firearm and beating him, Avalos told Parada he would kill him if he talked to the police. Avalos's words and actions indicated the gun was loaded and he was prepared to shoot Soto and Parada if Soto interfered in the altercation or Parada reported his crimes to the police.

## II.    Petition for Writ of Habeas Corpus (B254335)

"To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus . . . should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. [Citations.]" (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) "An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief." (*Id*. at pp. 474-475.) "'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone evidentiary hearing.' [Citation.] We presume the regularity of proceedings that resulted in a final judgment [citation], and . . . the burden is on the petitioner to establish grounds for his release. [Citations.]" (*Id*. at p. 474.) If the petitioner states a prima facie case for relief, the court will issue an order to show cause. (*Id*. at p. 475.) For the reasons set forth

10

below, we conclude Avalos has not stated a prima facie case for relief. Therefore, we have not issued an order to show cause.

In his writ petition, Avalos claims his right to a fair trial was violated because the trial court admitted into evidence two photographs of him which show his tattoos (People's 4A & 4B). We requested and received from the superior court the two color photographs which show Avalos at the time of trial, from the waist up, wearing a black tank top. Multiple and seemingly interwoven tattoos are visible on his arms, chest and neck. The tattoos on his arms depict numerous images which are difficult to decipher from the photographs.

In proving the criminal threats counts, the prosecutor sought to elicit testimony from Soto and Parada that their fear was based in part on how Avalos looked—that he took off his shirt, revealing tattoos. Defense counsel objected, stating "nowhere in the prior interviews, testimony, under oath, in reports, statements to anyone of any of the complaining witnesses, said that they were in fear because they saw tattoos on my client. So this is just something that is now attempting to be solicited from the witnesses, just to be prejudicial to my client. It's never been said." The prosecutor stated the victims reported to law enforcement they had seen Avalos's tattoos. The trial court commented, "if it contributed to the witness's fear that he had the tattoos on, that would be an appropriate thing for the People to raise." Defense counsel argued the victims mentioned the tattoos for purposes of describing Avalos, but did not inform officers they were afraid of Avalos because of the tattoos. The prosecutor represented the victims told her they were afraid, both because they saw Avalos's tattoos and they saw the gun. The trial court granted the prosecutor's request to take a photograph of Avalos with his arms exposed to show to the jury.

Defense counsel did not inform the trial court there was any specific tattoo which was particularly prejudicial. Although both witnesses testified they had seen tattoos on Avalos, neither described any particular tattoo.

In this petition, Avalos objects to the photographs on different grounds than he raised below. In support of the petition, Avalos submitted his own declaration, stating

11

one of the tattoos on his right arm depicts himself, holding a gun with smoke coming out of the barrel of the gun. Avalos argues "this tattoo should not have been admitted because it tended to show that petitioner possess[ed] and carried firearms and the smoke coming from the barrel implied that he uses them. It therefore suggested petitioner was a dangerous man who needed to be removed as a threat to society, whatever the actual merits of the prosecution's case against him."

We reject Avalos's claim for relief because he has not stated a prima facie case. Neither the prosecutor nor the witnesses pointed out any particular tattoo. It was only with the guidance of Avalos's declaration that this court on very close inspection was able to locate what might be the barrel of a gun with smoke rising and forming into a spectral face in the myriad of tattoos on Avalos's arms. We have no reason to believe the photographs of Avalos were prejudicial in the manner he states in the petition. We do not believe the jury could have deciphered the tattoo from the photographs without guidance, which it did not receive. But even if these photographs had some prejudicial effect, it was far outweighed by the evidentiary value to illustrate part of the basis for the victims' fears.

**DISPOSITION**

The judgment is modified to reflect the entire sentence imposed on count 4 (criminal threat against Oscar Soto) is stayed. As so modified, the judgment is affirmed. The petition for writ of habeas corpus is denied.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.

We concur:


JOHNSON, J.                    MILLER, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12