**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIS LAVONE CREECH, *Petitioner-Appellant*, | No. 13-16709 |
| v. | D.C. No. 3:11-cv-03670-CRB |
| SCOTT FRAUENHEIM, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted
December 11, 2014—San Francisco, California

Filed August 31, 2015

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges and Frederic Block,* Senior District Judge.

Opinion by Judge Paez

---

* The Honorable Frederic Block, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of California state prisoner Willis Lavone Creech's 28 U.S.C. § 2254 habeas corpus petition challenging his convictions for assault with a firearm and child endangerment.

The panel held that it was not unreasonable for the California Court of Appeal to conclude that there was sufficient evidence for a rational trier of fact to convict Creech of the assault with a firearm and child endangerment charges.

The panel also held that it was not contrary to or an unreasonable application of clearly established Supreme Court law to conclude that California's revised determinate sentencing law, which provides trial courts with discretion to decide among three sentences, is constitutional under *Apprendi v. New Jersey*.

### COUNSEL

Paul McCarthy (argued), and Robert J. Beles (argued), Law Offices of Robert J. Beles, Oakland, California, for Petitioner-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jill M. Thayer (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Gerald A. Engler, Senior Assistant Attorney General, and Gregory A. Ott, Deputy Attorney General, California Attorney General's Office, San Francisco, California, for Respondent-Appellee.

---

**OPINION**

PAEZ, Circuit Judge:

Willis Lavone Creech appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his convictions for assault with a firearm and child endangerment. He challenges his convictions on the basis of alleged violations of his Fourteenth Amendment Due Process rights. Creech also challenges his sentence under California's determinate sentencing law as a violation of his Sixth Amendment right to a jury trial. We hold that it was not unreasonable for the California Court of Appeal to conclude that there was sufficient evidence for a rational trier of fact to convict Creech of the assault with a firearm and child endangerment charges. We also hold that it was not contrary to or an unreasonable application of clearly established Supreme Court law to conclude that California's revised determinate sentencing law, which provides trial courts with discretion to decide among three sentences, is constitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Facts and Procedural History

## A. Events and Convictions at Issue[1]

Creech and his wife, Reanna, have a four-year-old daughter, Sofia, and a three-year-old son, Zachary.[2] One evening in September 2007, Creech and Reanna had an argument because Creech told Reanna he had obtained a shotgun. Reanna decided to leave him that night. A few weeks later, she took the kids to her father's house in Napa. Several days later, Creech and Reanna spoke on the phone. She told him the kids were at her father's and suggested that they talk another time to arrange for Creech to see them.

Later that night, Creech went to Reanna's father's house and asked him if he could see the children. Creech's father-in-law said "no." When Reanna returned to her father's home later that night, she saw Creech waiting there and drove away. He followed her. A highway patrol officer stopped Reanna for "driving 15 miles an hour in a 45." Reanna, who had been crying, explained to the officer the circumstances with Creech and their kids. At the time she was pulled over, Reanna was on the phone with the sheriff's department. Creech had contacted the police department and explained that he was trying to get in contact with his children, and that he had been "threatened off [his father-in-law's] property." The patrol officer told Reanna that, because Creech was the only custodial parent at her father's house, she had to go back

---

[1] The factual background is drawn from the testimony given at trial.

[2] To avoid confusion, we refer to members of Creech's family by their first names.

to her father's, otherwise Creech would be allowed to take the children. Reanna decided to return to her father's house.

Creech testified at trial that he was angry with his father-in-law for not allowing him to see his children. So, he decided to return the following morning to shoot at and damage his house. He grabbed bird shot ammunition because "shooting through things. . . wasn't [his] intent."

Late that morning, Reanna, who was at her father's house, heard a "solid thud." She looked outside and saw Creech holding a shotgun about fifteen to twenty feet away from the house. Reanna shouted to her stepsister, Jennifer Curry, to grab Sofia. Jennifer saw glass flying everywhere. Jennifer also looked out of a window and saw Creech standing about fifteen to thirty feet away, aiming his shotgun and tracking her and Sofia with the barrel of the gun. Reanna grabbed Zachary and went to the downstairs bathroom, and Jennifer and Sofia joined them. Juliane Rush, Reanna's stepmother, heard a "very loud pop" from the front of the house. She saw Creech standing about fifteen feet away from the front door.

Creech's account of the shooting differed in material respects. He testified at trial that, when he arrived at his father-in-law's house, the gate was locked, which he thought meant nobody was home. He did not see any cars that he recognized, but he did see an SUV and a silver Jetta. He did not hear or see anyone inside the house. He testified that he was forty or fifty feet away from the house while he was shooting. Creech did not see or hear anything while he was shooting. Creech testified that he has "horrible" vision, and that he did not wear his glasses that day. After the shooting, he went to his parents' house, ingested a bottle of pills, and was taken to the hospital.

Officers arrived at the Napa house minutes after the shooting, but Creech had left. They found three shells in front of the house. There were many very small perforations in the front door, and the outer pane of the double-paned window in the upper portion of the door was broken. Both layers of a double-paned window in the study were also broken.

Creech was tried and convicted in Napa County Superior Court of multiple counts of assault with a firearm, Cal. Penal Code § 245(a), shooting at an inhabited dwelling, Cal. Penal Code § 246, and felony child endangerment, Cal. Penal Code § 273a(a).

A forensic expert, Dr. John Thornton testified at trial. Among other tests, he performed ballistic gelatin testing "to mimic the behavior expected from human flesh . . . if a human body was shot with that projectile." He performed these tests "without glass at a distance of 45 feet . . . [his] best approximation of the distance between the cluster of shotgun shells in front of the door and the door." From this test, he opined that "there would be a minimum of an inch and a half of penetration into flesh." With dual-paned glass, no pellets permeated the gel from 45 feet. Dr. Thornton did not perform tests at any other distance.

In addition to the gelatin testing results, Dr. Thornton also stated other opinions based on the location of the shell casings and particle dispersion. First, he opined that the shots to the door were fired from between forty and fifty feet away, while the shot to the window was fired from twenty feet away. Second, he opined that there were lead pellets in the debris collected from the study. Third, he explained that the

bullet "we're speaking of is on the small side. It's intended for small birds."

Dr. Norris, a forensic science consultant, also testified at trial. He estimated that Creech shot the door and the window from the same distance, about fifty feet away at all times.

Ultimately, the jury convicted Creech of multiple counts of assault with a firearm, child endangerment, and shooting at an inhabited dwelling, with firearm use enhancements, Cal. Penal Code § 12022.5.[3] At the sentencing hearing in July 2008, the trial court explained that, in determining prison time, it was required to "select[] [among] the upper, middle or lower term" available. It stated that it must "exercise its discretion" and "consider circumstances in aggravation and mitigation when making that decision." The court found "numerous circumstances in aggravation," including "threat of great bodily harm and a high degree of cruelty and callousness," particularly vulnerable victims, "planning and sophistication," and "violent conduct." Further, the trial court found very few mitigating circumstances, although it did find satisfactory probation performance and a limited prior criminal record. The court, in exercising its discretion, imposed the upper term on the child endangerment and assault with a firearm convictions.[4] After applying statutory enhancements for use of a firearm and determining that the

---

[3] Creech's convictions for shooting at an inhabited dwelling are not at issue here.

[4] The court classified the child endangerment charge as to Sofia as the principal count of conviction, and all the other counts of conviction as subordinate. *See People v. Neely*, 176 Cal. App. 4th 787, 797–98 (2009) (explaining the sentencing protocol for multiple offenses with determinate terms under California Penal Code section 1170.1).

sentence for several counts should be served consecutively and others concurrently, the court imposed an effective sentence of thirty-one years and four months.

## B. Court of Appeal Opinion

Creech appealed.   The California Court of Appeal addressed both questions at issue here, namely Creech's Due Process challenge of the sufficiency of the evidence to convict him of assault with a firearm and child endangerment, and his Sixth Amendment challenge to his sentence.   In affirming Creech's convictions, the court reasoned that the inquiry for assault with a firearm focuses on the ability to inflict injury, rather than whether, given the circumstances, injury could have been the "instantaneous result of the defendant's conduct." Viewing the evidence in the light most favorable to the prosecution, it held that the jury could "reasonably infer from the evidence that Creech had the present ability to inflict injury on Jennifer, Sofia and Juliane." Regarding the child endangerment convictions, the court of appeal found "substantial evidence that Creech's conduct endangered his children under circumstances likely to produce great bodily harm or death."   In so concluding, the court rejected Creech's argument that the prosecution failed to proffer evidence that the shotgun pellets could have penetrated Sofia's and Zachary's skin.

In rejecting Creech's Sixth Amendment challenge to his sentence, the court noted that in response to the Supreme Court's 2007 decision in *Cunningham v. California*, 549 U.S. 270 (2007), the state legislature had revised the determinate sentencing law to give trial judges discretion in selecting among three possible prison terms.   It further noted that the California Supreme Court held in *People v. Sandoval*, 41 Cal.

4th 825 (2007), that the change in the law corrected the Sixth Amendment deficiency addressed in *Cunningham*. Although Creech argues that the post-*Cunningham* sentencing system under which he was sentenced did not comply with *Apprendi* and its progeny, he acknowledged before the court of appeal the California Supreme Court's decision in *Sandoval*. Noting that it was bound by *Sandoval*, the court of appeal did "not further address th[e] issue."

The California Supreme Court denied Creech's petition for review.

## C. District Court Proceedings

Creech next filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He again raised the same two federal constitutional claims that he litigated in state court: 1) evidentiary insufficiency in violation of his due process rights under the Fourteenth Amendment, and 2) improper judicial fact finding at sentencing in violation of his Sixth Amendment right to a jury trial.

The district court denied Creech's habeas petition. In rejecting the evidentiary sufficiency claims, the district court concluded that Creech could not meet the "twice-deferential standard" applied to such claims under *Jackson v. Virginia*, 443 U.S. 307 (1979), and the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The court held that it was not unreasonable for the court of appeal to conclude that a rational jury could find beyond a reasonable doubt that Creech had the present ability to inflict injury, or that Creech's perceptions would have alerted a reasonable person to the presence of people in the home. The court therefore

rejected Creech's challenge to his convictions for assault with a firearm and child endangerment.

Turning to Creech's Sixth Amendment claim, the court noted that it had previously addressed and rejected "an identical habeas argument" in *McCowan v. Marshall*, No. C 10-0473 CRB PR, 2011 WL 1544490 (N.D. Cal. Apr. 25, 2011), and that it continued to adhere to that decision.

## II. Standard of Review

We review de novo a district court's denial of a § 2254 habeas petition. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). A petitioner is entitled to habeas relief under AEDPA only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or if it was based an "unreasonable determination of the facts." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 407–09 (2000). Here, Creech challenges his convictions and sentence under AEDPA's "contrary to" and "unreasonable application" prongs. 28 U.S.C. § 2254(d)(1).

We analyze the court of appeal's decision because it is the last reasoned state court decision. *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

## III. Due Process Claims

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The inquiry for such a claim is whether "upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). The Supreme Court has labeled this standard a "twice-deferential standard" under AEDPA. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam); *see also Boyer v. Belleque*, 659 F.3d 957, 964–65 (9th Cir. 2011) (explaining that *Jackson*'s standard is deferential, and the state court's application of *Jackson* must be "objectively unreasonable" to grant habeas relief). And, "[a]lthough our sufficiency of the evidence review is grounded in the Fourteenth Amendment, we undertake the inquiry with reference to the elements of the criminal offense as set forth by state law." *Juan H.*, 408 F.3d at 1275.

Here, based upon the evidence presented at trial, it was not unreasonable for the state court to determine that a rational trier of fact could have found proof of guilt beyond a reasonable doubt of Creech's assault and child endangerment convictions. Thus, the state court decision was not contrary to or an objectively unreasonable application of *Jackson*.

### A. Assault Convictions

Creech was convicted of assault with a firearm under California Penal Code section 245(a)(2): "Any person who commits an assault upon the person of another with a firearm shall be punished . . . ." The Code defines assault as "an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another." *Id.* § 240.

Present ability to injure under California law exists when a defendant "has attained the means and location to strike

immediately." *People v. Chance*, 44 Cal. 4th 1164, 1174 (2008). An intended victim's "effective steps to avoid injury ha[ve] never been held to negate this present ability." *Id.*; *see also People v. Raivart*, 93 Cal. App. 4th 258, 267 (2007) (holding that "the fact that [the target] may have been sheltered, in whole or in part, by [a] building did not preclude [a] jury from finding defendant had the present ability to injure him"). Further, present ability does not require actually pointing the weapon in someone's direction, as "[t]hat degree of immediacy is not necessary." *Chance*, 44 Cal. 4th at 1176. However, "[a]bsent any evidence that the gun was loaded, or that [a defendant] attempted or threatened to use it as a bludgeon, there [i]s no proof of assault with a firearm." *People v. Beleke*, 33 Cal. App. 4th 1457, 1463 (1995), *disapproved of on other grounds by People v. Rodriguez*, 20 Cal. 4th 1, 13–14 (1999).

Creech argues that there was insufficient evidence to satisfy the present ability element because his gun was loaded with bird shot, which could not have injured anyone inside the house. He argues that there was no evidence that the bird shot entered the house, and no evidence that, if the pellets entered the house, they would have carried enough force to strike a person.

California's appellate courts have encountered arguments similar to Creech's. In *People v. Valdez*, the defendant shot at a gas station attendant who was not hit by the bullet because he was behind bulletproof glass. 175 Cal. App. 3d 103, 107 (1985). Valdez argued that the bulletproof glass negated his present ability to apply physical force required for assault with a firearm. *Id.* at 108. The court explained that "[o]nce a defendant has attained the means and location to strike immediately he has the 'present ability to injure.'" *Id.*

at 113. Further, "the fact an intended victim takes effective steps to avoid injury has never been held to negate this 'present ability.'" *Id.*; *see also Chance*, 44 Cal. 4th at 1173–74 (adopting this interpretation as "sound"). Because Valdez had a loaded gun that was fully operational, because he actually fired three times in the victim's direction, and because the victim was "easily within striking distance," the court had "no difficulty finding what appellant did indeed satisfied this element." *Valdez*, 175 Cal. App. 3d at 113.

The court of appeal's discussion of Creech's actions is consistent with *Valdez* and *Chance*. The court held that there was sufficient evidence to convict Creech of assault with a firearm. Taking the evidence in the light most favorable to the prosecution, the court noted that Creech had attained the means and location "to inflict serious injury . . . when he fired his shotgun at his father-in-law's home while he was standing 45 feet from the door." It reasoned that all those who were inside the house were in harm's way during the shooting, and it was "providential," rather than determinative, that no one was hurt. Further, there was evidence that bird shot is capable of penetrating human tissue, and therefore the court rejected the analogy to the unloaded gun cases. *See, e.g.*, *Chance*, 44 Cal. 4th at 1172 n.7 (stating that "assault cannot be committed with [an] unloaded gun, unless the weapon is used as bludgeon"). Creech, the court concluded, had the present ability to injure Jennifer, Sofia, and Julianne. Thus, it was not objectively unreasonable for the court of appeal to conclude that there was sufficient evidence adduced at trial to prove present ability. *See Jackson*, 443 U.S. at 324; *Parker*, 132 S. Ct. at 2152.

Creech also argues that there was insufficient evidence to show that "[w]hen [Creech] acted, [he] was aware of facts

that would lead a reasonable person to realize that [his] act by its nature would directly and probably result in the application of force to someone." Judicial Council of Cal. Crim. Jury Insts. No. 875 ("CALCRIM");[5] *see also People v. Wyatt*, 48 Cal. 4th 776, 779 (2010) (explaining this "reasonable person" requirement). He points to the locked gate, the absence of cars that were normally there, and the lack of any movement in or near the home. However, he testified that he saw cars at his father-in-law's home on the morning of the shooting. Further, as the district court noted, he took "no steps to ascertain that the house was unoccupied." Failing to take any such steps may have been particularly unreasonable given that Creech knew he had poor vision and did not wear his glasses that day. Therefore, it was not unreasonable for the court of appeal to conclude that there was sufficient evidence for a rational juror to find that a reasonable person would have been alerted to the presence of people in the home.[6]

In sum, it was neither contrary to nor an unreasonable application of clearly established Supreme Court law for the court of appeal to hold that there was sufficient evidence for a rational factfinder to convict Creech on each count of assault with a firearm.

---

[5] The jury instructions given at trial conform with CALCRIM 875 (2015).

[6] Creech also argues that, because no one was actually injured, there was insufficient evidence to convict him of assault with a firearm. One may commit assault, however, even where a victim suffers no physical injury. *People v. Aguilar*, 16 Cal. 4th 1023, 1028 (1997).

## B. Child Endangerment Convictions

California Penal Code section 273a(a) defines child endangerment as follows:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, wilfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished . . . .

Child endangerment "can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." *People v. Valdez*, 27 Cal. 4th 778, 784 (2002). This statute is "intended to protect a child from an abusive situation in which the probability of serious injury is great," but there is no requirement that great bodily injury actually result. *Id.*

Creech's primary argument regarding the child endangerment convictions is that it is harder to prove "great bodily harm or death" than it is to prove the elements of assault, which he maintains the prosecution failed to do. As we rejected his challenge to the firearm assault convictions, this argument does nothing to advance his challenge to the child endangerment convictions. Additionally, Creech argues that there was insufficient evidence to prove that the bird shot

could have penetrated the house to reach the children. As with the assault charges, it was not necessary to prove that the children were actually injured; all that the prosecution had to establish was a likelihood of great bodily harm. We agree with the court of appeal that the evidence was sufficient to establish this element of the offense. As the state court explained, the prosecution was not required to offer evidence that the pellets could have penetrated Sofia's or Zachary's skin. Sofia was "in the study when Creech shot out its seven-foot wide window." As to Zachary, the jury could "reasonably infer that [he] could have been seriously injured had one of the shotgun blasts broken the sidelight window of the front door."

Thus, we conclude that it was neither contrary to nor an unreasonable application of clearly established Supreme Court law for the court of appeal to conclude that there was sufficient evidence for a rational factfinder to convict Creech of child endangerment.

## IV. Sixth Amendment Claim

Under the Sixth and Fourteenth Amendments, "any fact [except for a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Under *Apprendi*, the statutory maximum is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original). But, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury

determination of the facts that the judge deems relevant." *United States v. Booker*, 543 U.S. 220, 233 (2005).

In *Cunningham*, the Supreme Court addressed whether California's then existing determinate sentencing law satisfied the requirements described in *Apprendi*, *Blakely*, and *Booker*. Under California's pre-*Cunningham* determinate sentencing system, the Penal Code prescribed lower, middle, and upper term sentences for most crimes. *Cunningham*, 549 U.S. at 277 (citing Cal. Penal Code § 288.5(a) (West 1999) (stating that a person convicted of continuous sexual abuse of a child "shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years")). California Penal Code section 1170(b) (West Supp. 2006) and California Judicial Council Rule 4.420(a)[7] required a court to impose the middle term unless there were aggravating or mitigating circumstances, which the court would determine based on consideration of enumerated factors. *Cunningham*, 549 U.S. at 277. Rule 4.405(d) stated that "[c]ircumstances in aggravation" are "facts which justify the imposition of the upper prison term." *Id.* at 278. Those facts were required to "be established by a preponderance of the evidence." *Id.* (quoting Rule 4.420(b)).

The Supreme Court held that California's system violated the Sixth Amendment. *Id.* at 293. The Court explained that the middle term was California's "maximum" under *Apprendi* because the middle term reflected the sentence to be imposed based on a jury's verdict without additional facts. *Id.* at 288. Therefore, California's determinate sentencing regime

---

[7] As in *Cunningham*, we reference the Judicial Council Rules that were in place before they were amended on January 1, 2007 to describe the pre-*Cunningham* sentencing scheme. 549 U.S. at 278 n.5.

violated the requirements outlined in *Booker*, *Blakely*, and *Apprendi* because the judge, not the jury, found the aggravating facts necessary to impose the upper term. *Id.* at 288–89. The Court recognized that other states allowed judges to "exercise broad discretion . . . within a statutory range," a solution that "encounters no Sixth Amendment shoal." *Id.* at 294. However, the Court also stated that California could "otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions." *Id.*

California responded to *Cunningham* by passing SB 40, which amended California Penal Code sections 1170 and 1170.3.**[8]** *See* 2007 Cal. Stat. 93. The legislature retained the three-option scheme, but "provide[d] that the choice of the appropriate term would rest within the sound discretion of the court." *Id.* The amended statute instructs sentencing judges to "select the term which, in the court's discretion, best serves the interests of justice," and to "state the reasons for its sentence choice on the record at the time of sentencing." *Id.*;**[9]**

---

**[8]** The initial legislative response was intended to "maintain stability in California's criminal justice system while the criminal justice and sentencing structures in California sentencing [we]re being reviewed." 5 Witkin, Cal. Crim. Law 4th (2012) Crim Trial, § 520(3) (quoting Stats. 2007, Chap. 3, § 1).

**[9]** The law was set to expire on January 1, 2009, *id.*, but the state senate passed another bill in 2008, extending the expiration date to January 1, 2011. Sen. Bill 1701, 2007–2008 Reg. Sess. (2008); 2008 Cal. Stat. 97. The Legislature declared "that the elimination of disparity and the provision of uniformity of sentences can be best achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion." *Id.* In 2013, this scheme was extended, and is now set to

Cal. Rules of Court, Rule 4.420(e) ("The reasons for selecting one of the three authorized prison terms . . . must be stated orally on the record."). In selecting one of the three terms, "the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." Cal. Rules of Court, Rule 4.420(b).[10]

Creech was sentenced under this discretionary three-option scheme.[11] He argues that the court of appeal acted contrary to or unreasonably applied clearly established Supreme Court law when it concluded that the trial court did not violate Creech's Sixth Amendment rights.[12]

---

expire on January 1, 2017. 5 Witkin, Cal. Crim. Law 4th (2015 Supp.) Crim Trial, § 520(3).

[10] In response to the legislative change, the Judicial Council revised the rules, effective May 23, 2007, that govern how to apply determinate sentences, recognizing that a judge is to exercise his or her discretion. *Id.*

[11] Assault with a firearm "shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000) and imprisonment." Cal. Penal Code § 245(a)(2). Child endangerment "shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." *Id.* § 273a(a).

[12] Although we have discussed *Cunningham* before, this is the first time we have analyzed whether a sentence imposed under California's post-*Cunningham* sentencing scheme warrants habeas relief under AEDPA. *See United States v. Santana*, 526 F.3d 1257 (9th Cir. 2008) (holding on direct appeal that *Cunningham* does not render unconstitutional procedures relating to revocation of supervised release); *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008) (holding that *Cunningham* did not announce a "new rule" and could be applied retroactively in the habeas context,

The California Court of Appeal did not discuss whether the regime under which Creech was sentenced comported with the Sixth Amendment because, as it stated, it was duty bound to follow the California Supreme Court's decision in *Sandoval*, 41 Cal. 4th 825. There, the court held that affording the trial court "'broad discretion' in selecting among the three terms specified by the statute for the offense . . . cure[s] the constitutional defect in the statute." *Id.* at 843–44. It reasoned that, in line with *Cunningham*, such a solution would constitute "exercis[ing] broad discretion in imposing a sentence within a statutory range" for which "the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.* at 844 (quoting *Booker*, 543 U.S. at 233, and citing *Cunningham*, 549 U.S. at 294). Further, in discussing the post-*Cunningham* sentencing scheme, the court explained that the trial court "will be required to specify reasons for its sentencing decision, but will not be required to cite 'facts' that support its decision . . . ." *Id.* at 846–47; *see also* Cal. Rules of Court, Rule 4.420(d)–(e).

The state court's determination that California's post-*Cunningham* revision did not violate Creech's Sixth Amendment right to a jury trial was neither contrary to nor an unreasonable application of *Cunningham, Booker*, *Blakely*, and *Apprendi*. The Supreme Court stated that permitting a trial judge to exercise "discretion to select a specific sentence within a defined range" would avoid a Sixth Amendment

---

where the petitioner was sentenced under California's pre-*Cunningham* scheme); *Wright v. Dexter*, 546 F.3d 1096 (9th Cir. 2008) (holding that, in light of *Butler*, *Cunningham* cannot form the basis of an application for a second or successive habeas petition). These post-*Cunningham* cases do not impact our decision here.

problem. *Booker*, 543 U.S. at 233. This is precisely what the California legislature did. Further, the California Supreme Court's conclusion in *Sandoval* that the three possible choices constitute a "range" is not contrary to or an unreasonable application of Supreme Court law. Finally, whereas the trial court was previously permitted to elevate a sentence to the upper term based on "facts," which violated the Sixth Amendment, *see Cunningham*, 549 U.S. at 274, California now calls those factors "reasons," Cal. Rules of Court, Rule 4.420(d)–(e), a distinction the California Supreme Court endorsed in *Sandoval*, 41 Cal. 4th 846–47. We therefore hold that it was neither contrary to nor an unreasonable application of clearly established Supreme Court law for the state court of appeal to conclude that Creech's Sixth Amendment right to a jury trial was not violated when the trial court, in an exercise of discretion, selected the upper term for Creech's convictions for assault with a firearm and child endangerment.

**AFFIRMED.**